Richard OWENS, Plaintiff,

Aaron Durall Beavers, Executor of the estate of Richard Owens, deceased, Plaintiff–Appellant,

v.

STOREHOUSE, INC., and Klais and Company, Inc., Defendants–Appellees.

No. 91–8696.

United States Court of Appeals, Eleventh Circuit.

Feb. 25, 1993.

Chip Rowan, Steven D. Caley, Atlanta, GA, for plaintiff-appellant.

Michael T. Isbell, Lambda Legal Defense & Educ. Fund, Ruth E. Harlow, American Civil Liberties Union Foundation, New York City, for amicus curiae American Public Health Ass'n, et al.

Richard L. Robbins, Judith A. O'Brien, Sutherland, Asbill & Brennan, Atlanta, GA, for defendants-appellees.

Before HATCHETT and DUBINA, Circuit Judges, and GODBOLD, Senior Circuit Judge.

DUBINA, Circuit Judge:

Richard Owens ("Owens") sued his former employer, Storehouse, Inc. ("Storehouse"), claiming that Storehouse's modification of its employee health plan to include a lifetime benefits cap of $25,000 for AIDS-related claims violated section 510 of the Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 829, as amended, 29 U.S.C. §§ 1001–1461 ("ERISA").[1] The district court granted summary judgment in favor of Storehouse. 773 F.Supp. 416 We affirm.

## I. BACKGROUND

Storehouse owns a chain of retail specialty furniture stores and employs nearly 160 persons full-time. In 1988, Storehouse sponsored an employee welfare benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(1) ("the Plan").[2] The Plan provided group hospital and medical benefits up to a lifetime maximum of $1,000,000 per employee. Owens worked for Storehouse in 1988 and participated in the Plan. In November 1988, Owens was diagnosed with Acquired Immune Deficiency Syndrome ("AIDS"). Shortly thereafter, Storehouse's insurer notified Storehouse of its intent to cancel Storehouse's policy because of the high incidence of AIDS in the retail industry generally and among Storehouse's plan members in particular. At the time, five Storehouse employees had AIDS. Negotiations followed, and the insurer renewed the policy but with drastic changes: the new policy provided less coverage, was more costly, and was guaranteed for six months only. Moreover, the new policy required Storehouse to remain self-insured for the first $75,000 in AIDS-related claims, as opposed to $25,000 for all other plan participants.

Faced with the added possibility that at the end of the six month term it would be self-insured for all claims up to $1,000,000 per employee, Storehouse sought another carrier. Its insurance broker advised Storehouse that it could insure its plan only by placing a maximum lifetime limit on coverage of AIDS and AIDS-related illnesses. Storehouse accepted this advice and modified the Plan to include a $25,000 cap

---

1. Subsequent to filing this action, Richard Owens died. Aaron Durall Beavers ("Beavers") was substituted as plaintiff.

2. "The Plan" refers to the Storehouse benefits plan entitled, "Your Medical Benefits Plan," prepared April 11, 1988.

on all AIDS-related medical claims.[3] The modifications were made pursuant to the Plan's express terms, which stated in part:

The full, absolute and discretionary right is reserved in the Plan for the Plan Sponsor to amend, modify, suspend, withdraw, discontinue or terminate the Plan in whole or in part at any time for any and all participants of the Plan.

The Plan at 45.

Despite the cap, Storehouse paid $116,324 for Owens' AIDS–related claims.[4] Because of the dwindling financial condition of Storehouse and the Plan, however, Storehouse notified Owens that in the future it would adhere strictly to the terms of the modified plan. It then forwarded Owens an additional $7,500 as a "transitional" benefit.

Owens filed suit in federal district court, alleging that Storehouse's modification of its medical benefits plan violated section 510 of ERISA and state law. Section 510 states:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

Owens sought a temporary restraining order to prevent Storehouse from denying his AIDS–related claims. The district court denied his motion, finding that both ERISA and the express terms of the Plan gave Storehouse the right to impose such a limitation. The parties conducted expedited discovery and submitted cross-motions for summary judgment. During the course of discovery, Owens died and Beavers was substituted as plaintiff. The district court granted summary judgment for Storehouse

on all of the ERISA and state law claims. Beavers then perfected this appeal, limiting it to the claim asserted under section 510 of ERISA only.

## II. ANALYSIS

A district court must grant summary judgment if the moving party shows that there is no genuine dispute regarding any material fact and it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). We review a district court's grant of summary judgment *de novo*, *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1570 (11th Cir.1991), and apply the same legal standards as those that controlled the district court, *Real Estate Financing v. RTC*, 950 F.2d 1540, 1543 (11th Cir.1992). As there are no material fact issues in dispute, we must decide whether the district court's determinations were proper as a matter of law. *See West v. Greyhound Corp.*, 813 F.2d 951, 954 (9th Cir.1987).

Section 510 of ERISA prohibits discrimination against any plan member "for exercising any right to which he is entitled under the provisions of the employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140. Beavers claims that Storehouse's modification of the Plan to include a lifetime AIDS-related benefits cap discriminated against Owens under both prongs of section 510. Beavers' claims cannot be supported.

 ERISA does not prohibit a company from terminating previously offered benefits that are neither vested nor accrued. *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). Unlike pension bene-

---

**3.** Storehouse also placed caps on claims related to mental illness and substance abuse ($25,000), temporomandibular joint dysfunction ($2,500), nicotine dependence ($500), and growth hormone drugs for dependent children ($10,000).

**4.** Storehouse had found a new insurance company to insure its modified plan; the new insurer, however, refused to provide coverage for seven individuals, including the five Storehouse employees known to have AIDS.

fits, welfare benefit plans neither vest nor accrue. *See* 29 U.S.C. § 1051(1); *Vasseur v. Halliburton Co.*, 950 F.2d 1002, 1006 (5th Cir.1992); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1160 (3rd Cir.1990). This is because Congress determined that vesting requirements for welfare plans "would seriously complicate the administration and increase the cost of plans whose primary function is to provide retirement income." H.R.Rep. No. 807, 93rd Cong., 2d Sess. 60, *reprinted in* 1974 U.S.C.C.A.N. 4639, 4670, 4726; S.Rep. No. 383, 93rd Cong., 1st Sess. 51 *reprinted in* 1974 U.S.C.C.A.N. 4890, 4935.[5] Instead, Congress intended employers to be free to create, modify, or terminate the terms and conditions of employee welfare benefit plans as inflation, changes in medical practice and technology, and the costs of treatment dictate. *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 492 (2nd Cir.1988); *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732, 105 S.Ct. 2380, 2385, 85 L.Ed.2d 728 (1985) (ERISA "does not regulate the substantive content of welfare-benefit plans").

■ Nevertheless, Beavers argues that employers may not change the terms of their employee insurance programs to affect a particular illness once an employee has contracted that illness and begun making claims for it. Beavers thus reads into section 510 a latent vesting requirement that ripens upon the contraction of, and the submission of claims for, a particular sickness. Yet, section 510 contains no such requirement. *See Musto v. American Gen. Corp.*, 861 F.2d 897, 901 n. 2 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989) (Congress specifically declined to make health benefits non-terminable.). Moreover, while an employer may contractually bind itself to provide fixed medical benefits, *Halliburton*, 950 F.2d at 1006, Storehouse did not do so here. Instead, it reserved the right to change or terminate the terms of its plan at any time. Absent contractual obligation, employers may decrease or increase

benefits. *Id.*; *Hamilton v. Travelers Ins. Co.*, 752 F.2d 1350, 1351–52 (8th Cir.1985); *see also Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th Cir.1990), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991) ("any retiree's right to lifetime benefits at a particular cost can only be found if it is established by contract under the terms of the ERISA–governed benefit plan document"). Thus, Beavers has failed to demonstrate a statutory or contractual right under section 510 upon which a claim of discrimination could be based.

■ We also reject Beavers' contention that the plan modifications at issue here constitute the discrimination forbidden by section 510. As noted, section 510 targets discriminatory conduct designed to interfere with the exercise or attainment of vested or other rights under the plan or ERISA. 29 U.S.C. § 1140. It does not broadly forbid all forms of discrimination. Rather, it outlaws discrimination undertaken for purposes expressly made "impermissible," *see Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), by the terms of the plan or statute. Thus, to prevail under section 510, a plaintiff must show that the alleged discrimination was designed either to retaliate for the exercise of a right or to interfere with the attainment of an entitled right. It is insufficient merely to allege discrimination in the apportionment of benefits under the terms of the plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Accordingly, section 510 relates to discriminatory conduct directed against *individuals;* it does not forbid discrimination relating to the plan in general. *See Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990); *Aronson v. Servus Rubber Div. of Chromalloy*, 730 F.2d 12, 16 (1st Cir.), *cert. denied*, 469 U.S. 1017, 105 S.Ct. 431, 83 L.Ed.2d 357 (1984).

---

**5.** It has been suggested that Congress feared that the imposition of vesting requirements on welfare benefit plans might discourage employers from offering any insurance at all. *See Adams v. Avondale Industries, Inc.*, 905 F.2d 943, 947 (6th Cir.1990).

■ To survive summary judgment, therefore, a plaintiff must present evidence of the employer's specific intent to violate ERISA, *Gavalik v. Continental Can Co.,* 812 F.2d 834, 851 (3rd Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); that is, evidence that the employer intentionally discriminated against an employee to retaliate for the exercise of rights, or to interfere with the attainment of entitled rights, under the plan or ERISA. 29 U.S.C. § 510. The record here is devoid of any evidence of intentional discrimination.

■ First, the record demonstrates no retaliatory intent. It is uncontroverted that Storehouse acted to reduce plan costs at a time of financial hardship. It amended the Plan because it was unable to secure long-term coverage for all its employees. Indeed, its insurance broker warned that the only way to preserve the Plan would be to cap coverage for AIDS-related claims. Faced with the possibility of terminating its Plan altogether or modifying it to incorporate a cap, Storehouse chose the latter. Contrary to Beavers' argument, Owens was not singled out for injurious treatment. Storehouse's payment of $91,324 in claims beyond the $25,000 cap supports this conclusion. Additionally, Owens was neither fired nor harassed. *See Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 237 (4th Cir.1991) (holding that primary purpose of section 510 is to prevent unscrupulous employers from discharging or harassing employees to prevent them from obtaining vested pension rights) (quoting *West v. Butler,* 621 F.2d 240, 245 (6th Cir.1980)); *Lojek v. Thomas,* 716 F.2d 675, 680 (9th Cir.1983) (same). Nor was Owens constructively discharged. *See Crouch v. Mo–Kan Iron Workers Welfare Fund,* 740 F.2d 805, 810 (10th Cir.1984) (determining that plaintiff entitled to relief under section 510 when hostile working conditions forced plaintiff to quit because she claimed pension benefits). The Plan modifications applied to all employees and included benefits caps for other illnesses. Furthermore, we do not infer retaliatory animus merely because Storehouse amended the Plan after Owens began making claims under it. It is

inevitable that plan modifications undertaken to cut costs related to certain benefits will adversely affect those making claims for such benefits. Yet this result is not tantamount to retaliation for purposes of section 510. Modification of an employee welfare benefit plan that "cuts along independently established lines ... and that has a readily apparent business justification, demonstrates no invidious intent." *Aronson,* 730 F.2d at 16.

■ Second, the record does not establish that Storehouse amended its plan to interfere with the "attainment of any right" to which Owens might have been entitled under section 510. The "right" referred to is not any right in the abstract. Rather, it is one specifically conferred by the plan or by ERISA. As discussed, ERISA does not confer a right to particular health benefits. *See Shaw,* 463 U.S. at 91, 103 S.Ct. at 2896. Moreover, Storehouse reserved the right to amend its plan at any time and acted pursuant to that right. When a plan sponsor reserves the absolute right to amend its health plan, section 510 does not prevent amendments made for the demonstrated purpose of cost-saving alone.

■ Nonetheless, Beavers discards the plain language of section 510 to argue that an AIDS–related benefits cap is discriminatory on its face. He cites *Vogel v. Independence Fed. Savings Bank,* 728 F.Supp. 1210 (D.Md.1990), for support. In *Vogel,* the plaintiff had a stroke and submitted claims under his employer's medical plan. Two years later, the employer's insurance plan became more expensive. Consequently, the employer, a bank, changed insurance carriers and purchased a new insurance plan that excluded Vogel from its coverage. The bank adopted another insurance policy that again excluded Vogel. Vogel sued under section 510, and the federal district court held that the bank's actions precluded summary judgment in its favor. *Vogel,* however, is inapposite. The *Vogel* plan affected the plaintiff *only* and had no potential to affect other present or future employees. Thus, the evidence suggests that the bank in *Vogel* deliberately

singled out its employee for exclusion from its insurance policy. As noted, the plan at issue here affected all employees equally, and there is no evidence of discriminatory intent. We decline to apply *Vogel* to these undisputed facts.

The facts and issues here are virtually indistinguishable from those in *McGann v. H & H Music Co.*, 946 F.2d 401 (5th Cir. 1991), *cert. denied sub nom. Greenberg v. H & H Music Co.*, —— U.S. ——, 113 S.Ct. 482, 121 L.Ed.2d 387 (1992). In *McGann*, an employer altered its group medical plan by reducing benefits for AIDS-related claims from $1,000,000 to $5,000. An employee with AIDS sued under section 510, alleging discrimination. The district court granted summary judgment for the employer. The Fifth Circuit affirmed, noting:

> ERISA does not broadly prevent an employer from "discriminating" in the creation, alteration or termination of employee benefits plans; thus, evidence of such intentional discrimination cannot alone sustain a claim under section 510. That section does not prohibit welfare plan discrimination between or among categories of diseases.

946 F.2d at 408.

■■■ Not surprisingly, Beavers argues that *McGann* was incorrectly decided. He claims that section 510 prohibits discrimination relating to *all* conditions of employment. Appellant's Reply Brief at 5, *Butler*, 621 F.2d at 245. We disagree. Section 510 simply does not forbid discrimination relating to the apportionment of benefits within an insurance plan. *See Shaw*, 463 U.S. at 91, 103 S.Ct. at 2896. Beavers' argument to the contrary stretches section 510 too far. Under his theory, employers who reduce or terminate coverage for certain categories of illness to avoid catastrophic costs would face near-automatic section 510 liability, regardless of the circumstances driving the employer's actions. Congress did not require employee welfare benefit plans to be chiseled in stone. It intended flexibility in the apportionment of their terms. *Moore*, 856 F.2d at 492. Section 510 prohibits discrimination driven by a desire to retaliate against an employee or

to deprive an employee of a right to which he or she may become entitled. It does not prohibit an employer from crafting its medical plan to meet economic imperatives. Neither does it mandate fixed coverage of catastrophic diseases. *See McGann*, 946 F.2d at 408; *see also Shaw*, 463 U.S. at 91, 103 S.Ct. at 2896 (ERISA does not require employers to provide any particular benefits nor does it forbid discrimination in the provision of employee benefits); *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 283 (3rd Cir.1988) (ERISA does not require an employer to provide any particular level of coverage once a medical benefits plan is established); *Moore v. Reynolds Metals Co. Retirement Program For Salaried Employees*, 740 F.2d 454, 456 (6th Cir. 1984), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985) (courts have no authority to decide which benefits employers must provide employees); *Viggiano v. Shenango China Div. of Anchor Hocking Corp.*, 750 F.2d 276, 279 (3rd Cir.1984) (ERISA does not require employers to provide medical benefit plans). In short, Beavers' reading of section 510 would create rights and benefits never intended by Congress. Absent evidence of retaliation or interference with the attainment of an entitled right under the plan, ERISA provides no right to perpetual health insurance with immutable terms. To hold otherwise would impair Congress' express intent that employers be free to fashion medical benefit plans as costs, technology, and the marketplace dictate.

## IV. CONCLUSION

For the foregoing reasons, we conclude that no statutory or contractual obligation prevented Storehouse from amending its employee welfare benefit plan to include a cap for AIDS–related claims. Accordingly, we affirm the district court's order granting summary judgment on behalf of Storehouse.

AFFIRMED.