Frederick DEGROOTH, George Glendenning, Donald Stockford, on Behalf of Themselves and All Others Similarly Situated

v.

GENERAL DYNAMICS CORPORATION, In Its Corporate and Fiduciary Capacity as Administrator of the Executive and Professional Plan; The Executive and Professional Plan.

Civil No. 3:93–940 (JAC).

United States District Court,
D. Connecticut.

Nov. 16, 1993.

486

W. Wilson Keithline, Stuart R. Wolk, Keithline & Dellamarggio, Hartford, CT, for plaintiffs.

Alex V. Barbour, Joseph G. Bisceglia, Craig C. Martin, Jenner & Block, Chicago, IL, for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

JOSÉ A. CABRANES, Chief Judge:

This action arises out of a reduction in benefits provided to certain employees of defendant General Dynamics Corporation under the Executive and Professional Plan, an "employee welfare benefit plan" governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* Pending before the court is the defendants' Motion to Dismiss (filed June 16, 1993). The motion was submitted for decision after oral argument on November 15, 1993.

## BACKGROUND

The following facts are not in dispute. Since 1960, General Dynamics Corporation has offered and maintained the Executive and Professional Plan (the "Plan") for certain executive and professional employees, including the plaintiffs, who are current employees of General Dynamics at its Electric Boat Division in Groton, Connecticut. The Plan provides life and medical insurance benefits superior to those benefits available to other employees.

On January 1, 1985, General Dynamics limited participation in the Plan to those employees who were eligible for membership as of December 31, 1984. On June 24, 1992, General Dynamics reduced certain medical benefits provided to those employees still covered by the Plan. This reduction affected medical benefits provided between the date an employee takes early retirement and the date that the employee reaches the age of 65 years. The reduction in medical benefits did not apply to those employees who had demonstrated an intent to take early retirement prior to July 1, 1992 and did so prior to the end of 1992, and those who actually took early retirement prior to July 1, 1992. On March 3, 1993, General Dynamics made other modifications to the Plan.

On May 5, 1993, the plaintiffs filed this action alleging that General Dynamics had granted them "grandfathered" rights to benefits under the Plan as of December 31, 1984, and that General Dynamics violated these rights under ERISA and state law by modifying the benefits provided to the plaintiffs.

## DISCUSSION

### I.

In deciding a motion to dismiss, the court must accept as true all factual allegations in the complaint and draw inferences from these allegations in the light most favorable to the plaintiffs. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The complaint, or portions thereof, will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

In support of their motion to dismiss, the defendants have attached to their motion papers a copy of the Summary Plan Description ("SPD") and the affidavit of Marie Anna Pardo, the employee benefits supervisor at General Dynamics. The defendants urge the court to consider these materials in deciding their motion to dismiss. The plaintiffs respond that consideration of these outside materials would convert the defendants' motion

into a motion for summary judgment. The court disagrees.

■ A district court has discretion to consider a document outside of pleadings on a motion to dismiss if "[1] there was undisputed notice to plaintiffs of [the document's] contents and [2] [the document] was integral to plaintiffs' claim." *Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992); *Teagardener v. Republic–Franklin Inc. Pension Plan,* 909 F.2d 947, 949–50 (6th Cir.1990) (district court properly considered pension plan document on a motion to dismiss, even though the plaintiffs failed to attach such document to the complaint), *cert. denied,* 498 U.S. 1027, 111 S.Ct. 678, 112 L.Ed.2d 670 (1991). This test is clearly satisfied in the instant case.

First, the plaintiffs in the instant case had notice of the contents of the SPD. At oral argument, the plaintiffs conceded that they possessed the SPD which the defendants attached to their motion. In addition, the plaintiffs demonstrated full knowledge of the contents of the SPD, asserting that its contents had not been amended since December 1981.

Second, the SPD is "integral" to the plaintiffs' complaint. The SPD is the primary vehicle for informing plan participants and beneficiaries of their rights under an ERISA plan.[1] *See Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988). When participants file a lawsuit to determine the scope of those rights, the SPD is surely integral to that determination, even if it is not attached as an exhibit to the complaint.

Because the plaintiffs were on notice of the contents of the SPD and the SPD is integral to the plaintiffs' claims, the court may consider it without converting the defendants' motion to dismiss into a motion for summary judgment. However, the court may not consider the affidavit of Marie Anna Pardo, except to the limited extent it authenticates the SPD. *See Swanson v. Local 13 Pension*

*Plan,* 779 F.Supp. 690, 695 (W.D.N.Y.) (district court converted a motion to dismiss into a motion for summary judgment because the parties submitted affidavits regarding communications between a plan administrator and the plaintiff), *aff'd without opinion,* 953 F.2d 636 (2d Cir.1991).

## II.

■ In Count I of the complaint, the plaintiffs allege that General Dynamics violated ERISA, 29 U.S.C. § 1001 *et seq.,* by not continuing the benefits of the Plan as they existed as of December 31, 1984. The defendants argue that the plaintiffs have failed to allege any express contract provision by which their rights in the Plan vested. According to the defendants, the inter-office memoranda on which the plaintiffs rely to establish their "grandfathered" status are insufficient because such informal communications between an employer and plan beneficiaries do not—and cannot—constitute amendments to an ERISA plan. Furthermore, the defendants argue that the SPD expressly provides that General Dynamics may amend the Plan.

The plaintiffs agree that informal communications do not modify an ERISA plan, as long as plan documents are kept up-to-date as required by section 102 of ERISA, 29 U.S.C. § 1022. In the instant case, because the defendants have not amended the SPD or issued a new one since December 1981, the plaintiffs argue that the court may look to the inter-office memoranda to define the terms of the Plan. Furthermore, the plaintiffs maintain that General Dynamics should be estopped from denying the effects of the inter-office memoranda since they failed to properly amend the SPD. The court finds the plaintiffs' arguments unpersuasive.

In *Moore v. Metropolitan Life Ins. Co.,* 856 F.2d 488, 492 (2d Cir.1988), our Court of Appeals held that "absent a showing tantamount to proof of fraud, an ERISA welfare plan is not subject to amendment as a result

---

1. Section 102(a) of ERISA requires that the plan administrator furnish plan participants and beneficiaries with a summary plan description "written in a manner calculated to be understood by the average plan participant, and ... sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a).

of informal communications between an employer and plan beneficiaries." The *Moore* court reasoned that:

> Congress intended that plan documents and the SPDs exclusively govern an employer's obligations under ERISA plans. This intention was based on a sound rationale. Were all communications between an employer and plan beneficiaries to be considered along with the SPDs as establishing the terms of a welfare plan, the plan documents and the SPDs would establish merely a floor for an employer's future obligations. Predictability as to the extent of future obligations would be lost, and, consequently, substantial disincentives for even offering such plans would be created.

*Moore,* 856 F.2d at 492.

Unfortunately for the plaintiffs in the instant case, *Moore* bars their reliance on inter-office memoranda to define the terms of the Plan. As plaintiffs' counsel conceded at oral argument, no allegation of fraud has been made here, nor does the record contain any evidence of bad faith or intent to deceive on the part of General Dynamics. Accordingly, under *Moore,* the plan documents and the SPD exclusively govern the terms of the Plan.

Constrained to the four corners of the SPD, the plaintiffs have not established—and cannot establish—that they are entitled to "grandfathered" benefits under the Plan. The SPD contains no provision by which the plaintiffs' rights in the Plan vested as of December 31, 1984. Furthermore, the SPD does contain a provision which expressly reserves to General Dynamics the right to amend or terminate the benefits under the Plan. *See* Summary Plan Description, attached as Exhibit A to the Affidavit of Marie Anne Pardo (filed June 16, 1993), at 45. Accordingly, the continuation of the plaintiffs' benefits after December 31, 1984 was wholly at the discretion of General Dynamics, and the reduction of those benefits does not violate the plaintiffs' rights under ERISA.

This conclusion is not altered by the fact that General Dynamics has not amended the SPD since December 1981. Even assuming General Dynamics violated an obligation to update the SPD, the plaintiffs have not offered any authority for their assertion that an SPD does not govern the rights of the parties if it is not in perfect procedural compliance with ERISA regulations. Indeed, the opposite appears to be true; in *Moore,* the Court of Appeals enforced the terms of an SPD that was not formally amended for seven years, despite "numerous changes in its medical plans." *Moore,* 856 F.2d at 490.

Furthermore, if accepted, the plaintiffs' argument could lead to the precise result cautioned against in *Moore*—that is, the occurrence of disputes over the meaning and effect of informal communications between employers and plan beneficiaries—every time a plan administrator failed to comply with one of the technical reporting requirements of ERISA. Accordingly, it cannot be said that General Dynamics' failure to amend the SPD undermines the validity or binding effect of the document. What can be said, at most, is that General Dynamics' failure to amend the SPD should have put the plaintiffs on notice that, sadly, the promises allegedly made to them in the inter-office memoranda apparently were not worth the paper on which they were printed.

For the foregoing reasons, Count I of the complaint must be dismissed.

### III.

■ In Count II of the complaint, the plaintiffs allege that General Dynamics violated section 510 of ERISA, by arbitrarily allowing some Plan members, but not others, to retire by December 31, 1992 and thereby retain enhanced benefits.[2] The defendants argue that Count II should be dismissed because, even if apportioning benefits among employees is indeed arbitrary, such a practice does not constitute adverse employment

---

**2.** Section 510 provides in pertinent part: "It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled... or for the purpose of interfering with the attainment of any right to which such participant may become entitled...." 29 U.S.C. § 1140.

action, as required by section 510. The court agrees.

Section 510 "targets discriminatory conduct designed to interfere with the exercise or attainment of vested or other rights under [a] plan or ERISA." *Owens v. Storehouse, Inc.*, 984 F.2d 394, 399 (11th Cir.1993) (citations omitted). To state a claim under section 510, a plaintiff must allege that adverse employment action was taken against him in retaliation for asserting his rights under ERISA or for the purpose of interfering with the attainment of those rights. *See Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1089 (8th Cir.1992) (to prove a violation of section 510, a plaintiff must show that adverse employment action was taken against him); *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990) ("[a] fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory or wrongful way"); *Swanson v. Local 13 Pension Plan*, 779 F.Supp. at 702–03 (section 510 "only reaches conduct which fundamentally changes the employer-employee relationship").

A reduction of benefits, in and of itself, is not adverse employment action for purposes of section 510. *See Berger v. Edgewater Steel Co.*, 911 F.2d 911, 922–23 (3d Cir.1990) (informing employees of proposed retirement plan amendments did not constitute a violation of section 510), *cert. denied*, 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Owens v. Storehouse, Inc.*, 984 F.2d at 399 (reduction of medical benefits did not violate section 510). Furthermore, allocating benefits among employees, or allowing some employees to retire during a grace period and thereby retain discontinued benefits, does not constitute adverse employment action. *See Owens*, 984 F.2d at 400 (section 510 does not forbid discrimination in the apportionment of benefits within a plan); *Tusting v. Bay View Federal Savings & Loan Ass'n*, 789 F.Supp. 1034, 1043 (N.D.Cal. 1992) (section 510 not violated where an employee allows some employees to retire during a grace period and thereby continue to receive discontinued benefits). While such practices may indeed be arbitrary, they are not actionable under section 510, in the absence of further allegations of an employer's specific intent to discriminate against individual employees. *See Owens*, 984 F.2d at 400.

In the instant case, the plaintiffs merely allege that General Dynamics violated section 510 by arbitrarily denying benefits to some employees while affording those benefits to others. Because it is settled that apportioning benefits, even if accomplished arbitrarily, is not adverse employment action for purposes of section 510, this allegation is insufficient to state a claim. Accordingly, Count II must be dismissed.

## IV.

In Count III of the complaint, the plaintiffs allege that General Dynamics created a contract with them by representing that they were "grandfathered," and subsequently breached that contract by modifying the benefits provided under it. In Count IV of the complaint, the plaintiffs allege that General Dynamics violated the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. § 42–110b ("CUTPA"), by arbitrarily allowing some Plan members but not others to retire by December 31, 1992, and thereby retain enhanced benefits. The defendants contend that these claims should be dismissed because section 514(a) of ERISA preempts any and all state law claims that "relate to" any employee benefit plan. The court agrees.

Section 514(a) of ERISA provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). A district court must construe the phrase "relate to" in its "normal sense"—that is, a state law claim is preempted by ERISA "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *District of Columbia v. Gr. Wash. Bd. of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992); *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 10 (2d Cir.1992) (ERISA preempts a breach of contract claim where that claim deals "expressly and exclusively" with benefits under the plan); *Altieri v. Cigna Dental Health, Inc.*, 753 F.Supp. 61, 64 (D.Conn.1990) (ERISA preempts a CUTPA claim where

that claim arises out of action taken in connection with the plan); *Cote v. Durham Life Insurance Co.*, 754 F.Supp. 18, 22 (D.Conn. 1991) (same).

In the instant case, both Count III (breach of contract) and Count IV (CUTPA) clearly "relate to" the Plan. These counts arise out of the same course of conduct on which the plaintiffs base their ERISA claims. Indeed, the allegations in Count III and Count IV make explicit reference to the Plan and are worded almost identically to their ERISA counterparts contained in Counts I and II, respectively. Furthermore, the relief which the plaintiffs seek in Counts III and IV depends upon an interpretation of the Plan. Under these circumstances, it is clear that the plaintiffs' state law claims "relate to" the Plan. Accordingly, Counts III and IV must be dismissed.

## CONCLUSION

Based on the full record and for the reasons stated above, the defendants' Motion to Dismiss (filed June 16, 1993) (doc # 13) is GRANTED. Judgment shall enter for the defendants.

It is so ordered.