Deanna WHARTON, Plaintiff,

v.

DUKE REALTY, LLP and Theodore Furst In his Individual and Corporate Capacities Defendants.

No. 06 CIV. 6937(CM).

United States District Court, S.D. New York.

Dec. 22, 2006.

Alan B. Pearl, Alan B. Pearl & Associates, P.C., Syosset, NY, for Plaintiff.

Susan Meryl Corcoran, Jackson Lewis LLP, White Plains, NY, for Defendants.

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MCMAHON, District Judge.

Plaintiff Deanne Wharton, a former employee of defendant Duke Realty, brings the current action seeking relief under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 et. Seq. She alleges that defendants violated Section 510 of ERISA, 29 U.S.C. § 1140, by firing her in order to interfere with her protected rights under ERISA and contesting her right to unemployment insurance benefits in retaliation for her exercise of those rights. In addition to her claim for damages, she seeks to recover benefits under Section 502 of ERISA, 29 U.S.C. § 1132. In connection with her termi-

nation by defendants, plaintiff also asserts state law claims for breach of contract and for age discrimination in violation of the New York State Human Rights Law, N.Y. Executive Law 296.

## Facts

The complaint pleads the following facts: Plaintiff was hired by defendants in or around July 1980 to work two days a week as a bookkeeper. Over the course of her twenty-six year employment with defendants, plaintiff's job responsibilities expanded significantly; at the time of her termination her title was Financial Administrator and her salary was $60,000 per year. During the last five years of her employment, plaintiff was responsible for all of Duke's financial transactions, including, *inter alia*, payroll accounting, payment tax reports, pension plan accounting, administration of pension and medical plans, accounts payable, accounts receivable, and banking.

Plaintiff pleads that Duke maintained a qualified pension and retirement plan as defined at 29 U.S.C. § 1002(2A) of ERISA, and that Duke was the plan sponsor of that plan.

In 1997, defendants and plaintiff entered into an agreement. The complaint alleges that the agreement provides that Duke would contribute money representing 25% of plaintiff's salary into Duke's pension and retirement plan, a qualified 401K plan, for the purpose of providing plaintiff with retirement benefits. The agreement, denominated the 1997 Benefits Agreement, is attached to the motion to dismiss. It provides that plaintiff would receive "additional compensation annually from Duke Management (or its related companies) while she is in their employ" if "Duke Millwork discontinues its profit sharing retirement plan for any reason." The amount of the additional compensation under the agreement is to be "calculated at the same percentage of salary (25%) as that which will be used for her profit sharing retirement contribution in 1997." The agreement further provides that if Duke Millwork does not fund its profit sharing plan annually at the 1997 level (15% maximum contribution), plaintiff will receive the difference as additional compensation, and that profit sharing contributions and any additional compensation will be made annually until her retirement but not later than age 65. The agreement does not refer to any 401K plan or even, by its literal terms, require that Duke pay the money into such a plan, as opposed to simply giving the money to plaintiff to do with as she wished. However, the complaint alleges that the parties "operated under the 1997 Benefits Agreement for many years," Viewing that allegation most favorably to plaintiff, as I must on this motion to dismiss, it could be read to assert that Duke terminated the pension plan and made contributions on plaintiff's behalf to the 401K, as alleged.

Throughout her employment, plaintiff and defendant Theodore Furst ("Furst") had a close working relationship. This relationship was allegedly undermined during the last three years of plaintiff's employment by Furst's wife, Dee Harriss, another Duke employee. On several occasions in 2003 and 2004, plaintiff was made to feel that her position with Duke was in danger.

In September 2005, plaintiff returned from vacation and was confronted by Furst, who falsely accused her of not being accessible during her vacation. The locks on plaintiff's office door and desk had also been changed. After meeting with the plaintiff, defendants did not terminate her. Instead, Furst told plaintiff that she deserved some job security, and the two jointly discussed and prepared an agreement (the "Employment Agreement"),

which provided that plaintiff would remain employed by the defendants for at least five years, during which time she would receive the same benefits, including the retirement and health insurance benefits, that she had been enjoying.

On January 24, 2006, the day before plaintiff was scheduled to leave on vacation, she was asked to resign her employment—no reason given—and to sign a release that offered her $20,000 for waiving all rights to contest her termination, as well as all her rights under the "1997 Benefits Agreement" and the Employment Agreement. Defendants also stated that if plaintiff signed the agreement, they would not contest her eligibility for unemployment insurance benefits. Plaintiff refused to resign her employment or sign the release.

On February 7, 2006, plaintiff returned from her vacation and was immediately fired. The decision to fire plaintiff was made by defendant Furst. Plaintiff was given no reason for her termination except for the statement by defendants' attorney, "You and Mr. Furst are going in different directions." She was offered the same release that was offered to her on January 24, 2006 and was told that she should sign it because that would "make it easy" on her. Plaintiff was told she had 45 days to review the document. She did not sign the release.

Defendants contested her eligibility for unemployment insurance benefits, as they had threatened to do when she refused to sign the release offered to her on January 24, 2006 and February 7, 2006. They falsely represented to the New York State Department of Labor's Unemployment Insurance Division that plaintiff was fired for misconduct. Although defendants initially prevailed, plaintiff appealed the denial of her unemployment benefits. On August 3, 2006, the Unemployment Insurance Appeal

Board issued a decision for the plaintiff in which it found defendants' allegations of plaintiff's misconduct to be baseless.

On September 11, 2006, plaintiff commenced this suit. Her complaint alleges five causes of action. In the first cause of action, plaintiff alleges that defendants violated Section 510 of ERISA by terminating her, at least in part, in order to interfere with her entitlement to health and pension benefits under the "1997 Benefits Agreement" and the Employment Agreement. In the second, she claims that defendants violated Section 510 by contesting her entitlement to unemployment insurance benefits in retaliation for her refusal to sign a release of all rights to such health and pension benefits under the "1997 Benefits Agreement" and the Employment Agreement as well as the right to contest her termination. In her third cause of action, plaintiff seeks to recover benefits allegedly owed to her pursuant to Section 502(a)(1) of ERISA, 29 U.S.C. § 1132. Plaintiff's fourth cause of action alleges that defendants breached the Employment Agreement by terminating her prior to the expiration of the five-year term specified in the contract. Finally, plaintiff's fifth cause of action alleges age discrimination in violation of the New York State Human Rights Law, N.Y. Executive Law 296.

### Standard of Review on a Motion to Dismiss Pursuant to Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. "In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true." *Frasier v. Gen-*

*eral Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). The Court is also required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 515, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972). The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash,* 976 F.2d 86, 87 (2d Cir.1992) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Additionally, the Rules do not require the claimant to set out in detail the facts upon which he or she bases a claim, but only that he or she gives a statement of his or her claim that will give defendant "fair notice of what [his or her] claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

█ In deciding a motion to dismiss, this Court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit. *Rothman v. Gregor,* 220 F.3d 81, 88–89 (2d Cir.2000); *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,* 75 F.3d 801, 808 (2d Cir.1996); *Wolff v. Rare Medium, Inc.,* 210 F.Supp.2d 490, 494 (S.D.N.Y.2002). The parties agree that both the "1997 Benefits Agreement" and the Employment Agreement are properly deemed part of the complaint for purposes of this motion. *Tirone v. New York Stock Exchange,* 2006 WL 2773862, 2006 U.S. Dist. LEXIS 69591 (S.D.N.Y. Sept. 28, 2006). The Employment Agreement by its terms provides that plaintiff's "benefits (medical insurance, pension benefit, and any other benefits) will remain in effect and be guaranteed" with her employ-

ment. It does not, however, incorporate the terms of any plan or other document pursuant to which plaintiff was receiving benefits.

Defendants have submitted a Health Insurance Plan Evidence of Coverage ("Evidence of Coverage") that they contend should also be considered by this court in deciding the motion, because it is a policy under which the plaintiff seeks to recover health benefits. Plaintiff responds that the Evidence of Coverage should be excluded from the court's consideration because she neither referenced this document in the complaint nor relied on this document in her complaint. In *Harrison v. Metropolitan Life Insurance Co.,* 417 F.Supp.2d 424, 431 (S.D.N.Y.2006), the court deemed it improper to consider documents extraneous to the complaint if those "documents were not incorporated by reference or cited to in the complaint, and there is not sufficient indication that [the plaintiff] relied upon the documents in commencing [the] action." Absent any indication that the plaintiff relied on the document in bringing her complaint, the court will not consider the Evidence of Coverage. However, I will consider it in deciding whether plaintiff should be permitted to amend any claims that might be dismissed.

## I. Section 510 ERISA Claims

Plaintiff's first and second cause of action are brought under Section 510 of ERISA. Section 510, as codified at 29 U.S.C. § 1140, provides in relevant part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this title, section 3001 [29 U.S.C. Sec 1201], or the Welfare and Pension Plans

Disclosure Act, or for the purpose of interfering with the attainment of any right to which such participant may be entitled under the plan, this title, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140.

■ Section 510, by its terms, only protects rights conferred by an ERISA plan or by the statute itself. *Straus v. Prudential Employee Savings Plan,* 253 F.Supp.2d 438, 448 (E.D.N.Y.2003), quoting *Owens v. Storehouse, Inc.,* 984 F.2d 394, 399 (11th Cir.1993); *West v. Greyhound Corp.,* 813 F.2d 951, 954 (9th Cir. 1987). Moreover, with respect to pension plans—though not welfare plans—a plaintiff must have a vested right to benefits *See Reichelt v. Emhart Corp.,* 921 F.2d 425, 430 (2d Cir.1990);

■ In the present case, the plaintiff has not alleged that defendants have intentionally interfered with any statutory ERISA rights or retaliated against her for the exercise of such rights. Thus, to avoid dismissal, she must allege that she has vested rights under an ERISA-covered employee benefit plan and that defendant interfered with her attainment of those rights or retaliated against her for exercising them. *See Tambash v. St. Bonaventure University,* 2004 WL 2191566, at *3–4, 2004 U.S. Dist. LEXIS 19914 at *10 (W.D.N.Y. Sept. 24, 2004); *see also Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein P.C.,* 277 F.3d 882, 892 (7th Cir.2001)("ERISA protects only employees who are "participants" and "beneficiaries" of ERISA-governed plans," see 29 U.S.C. § 1140. Without a plan, [plaintiff] can be neither a participant nor a beneficiary. She thus stands outside the class of individuals ERISA protects.")

■ Plaintiff's complaint references two agreements—the "1997 Benefits Agreement" and the Employment Agreement. She claims that these agreements are either ERISA plans or incorporate ERISA plans by reference.

With inapplicable exceptions, ERISA covers all "employee benefit plans." 29 U.S.C. § 1003(a). Employee benefit plans must be either "employee welfare benefit plans" or "employee pension benefit plans." 29 U.S.C. § 1002(3). Plaintiff alleges that the Benefits Agreement is "in part, a health and welfare plan." (Complaint at ¶ 16.) Under ERISA, a welfare plan is defined, in relevant part, as a "plan, fund or program" that is established or maintained by an employer for the purpose of providing "medical, surgical or hospital benefits or care" or "benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(2).

On its face, the "1997 Benefits Agreement" contains no provisions that bring it within the statutory definition of a welfare plan. Nor has the plaintiff alleged any additional facts that, if proven, would establish that the "1997 Benefits Agreement" is a welfare plan as defined by ERISA.

Plaintiff also contends that the Benefits Agreement confers rights under ERISA as a qualifying pension plan, because it required the defendant to contribute money to her 401K plan in lieu of providing her with a pension.

A "pension plan" is defined, in relevant part, as a "plan, fund or program," established or maintained by an employer that, by its terms or as a result of surrounding circumstances, "provides retirement income to employees" or "results in a deferral of income by employees to the termination of covered employment or beyond." 29 U.S.C. § 1002(2). As I have already noted, by its terms the "1997 Benefits Agreement" does not require Duke to contribute money to plaintiff's 401K plan and

thus by its terms does not "result in a deferral of income by employees to the termination of covered employment or beyond." Nor do the literal terms of the Agreement incorporate any 401K plan by reference with the required specificity. *Silver v. I Goldberg & Partners, Inc.,* 1994 WL 392187, at *4 (S.D.N.Y. July 28 1994)("The Insurance Provision expressly refers to the Health Plan in granting Silver the right to health insurance for 10 years, and therefore I read it as a matter of common sense to incorporate the Health Plan by reference.")

However, plaintiff describes the purpose of the agreement as providing her with 401K contributions and affirmatively alleges that the parties operated under the agreement as described for many years. If the facts bear our plaintiff's allegations, then the "1997 Benefits Agreement" "result[ed] in a deferral of income by [plaintiff] to the termination of covered employment or beyond," and so qualifies as an ERISA pension plan. At this pleading stage, I cannot say that plaintiff can prove no set of facts that would bear out her contention (of law, not of fact) that the "1997 Benefits Agreement" is covered by ERISA.

By contrast, the Employment Agreement—which plaintiff also claims is covered by ERISA—is just that, an employment agreement, and nothing more. The agreement lacks any of the hallmarks of an administrative program that courts have used as practical guidelines to determine whether an ERISA plan exists. *See Williams v. Wright,* 927 F.2d 1540, 1543 (11th Cir.1991)(citing *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982)) (A "plan, fund or program" under ERISA is established "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and

procedures for receiving benefits.") Instead, the Employment Agreement provides that plaintiff "will remain in the employ of Duke Realty, LLC ... for at least five years." (Employment Agreement at 1.) The agreement also provides as follows: "Her benefits (medical insurance, pension benefit, and any other benefits) will remain in effect and be guaranteed with this employment." (*Id.*)

But even under a "flexible analysis," the Employment Agreement does not refer to any actual plan with enough specificity to deem that plan incorporated by reference. *See Silver v. I Goldberg & Partners, Inc.,* 1994 WL 392187, at *4 (S.D.N.Y. July 28 1994). The Employment Agreement simply provides that, as part of her compensation, plaintiff will receive certain benefits. These benefits may be provided pursuant to one or more ERISA plans (including the 1997 Agreement or the medical insurance provided by the employer), but that does not transform the Employment Agreement into an ERISA plan. *See* 29 U.S.C. § 1002(1), 1002(2); *see also Janover v. Bernan Foods,* 901 F.Supp. 695, 699–700 (S.D.N.Y.1995)(employment contract that contains incidental provisions to induce continued employment is not a separate ERISA plan); *Abramowicz v. Rohm and Haas Co.,* 2001 WL 1346404 (E.D.Pa. 2001)(term in employment agreement providing for "the same severance and outplacement services" provided to other employees was not enforceable under ERISA because it is neither a free-standing ERISA plan nor an amendment to an ERISA plan); *Plante v. Foster Klima and Co., LLC,* 2004 WL 2222318, at *3–4, 2004 U.S. Dist. LEXIS 19725, at *10–11 (Dist.Minn2004)(arrangement to continue to provide benefits "does not invoke ERISA's protections merely because it delivers benefits.") The Employment Agreement is not, therefore, governed by ERISA—which may redound to plaintiff's

benefit, since her state law claim for breach of that agreement is thus not preempted by ERISA (see below).

Defendants further claim that plaintiff's first and second causes of action must fail because the relief they seek is not cognizable under Section 510. They are correct.

Pursuant to her first cause of action, plaintiff claims she has been "damaged in an amount to be determined at trial for all benefits that plaintiff was entitled to receive, as well as liquidated damages, interest and attorneys fees according to statute." (Complaint at ¶ 38.) With respect to the second cause of action, plaintiff claims she has been "damaged in an amount to be determined at trial for the cost of litigating the unemployment insurance determination, as well as liquidated damages, interest and attorneys fees according to statute." (Complaint at ¶ 47.) Defendants contend that plaintiff's relief for alleged Section 510 violations is limited to "appropriate equitable relief" under Section 502(a)(3), 29 U.S.C. § 1132(a)(3), and the relief she seeks is not equitable in nature.

Plaintiff's response to this contention is twofold. First, she argues that Section 502(a)(1)(B) is available as a remedy under Section 510 if, as is the case here, the plaintiff can point to specific benefits that she was denied. Second, plaintiff argues that she has stated a claim for equitable relief pursuant to Section 502(a)(3).

■ As is explained more fully below, the court rejects plaintiff's § 502(a)(1)(B) claim because by the express terms of the ERISA plan under which she seeks to recover benefits, her eligibility for benefits terminates with her employment. *See also Varity Corp. v. Howe*, 518 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)(Plaintiffs could not proceed under § 502(a)(1) because they were no longer members of their plan and, therefore, had no benefits due them under the terms of the plan

pursuant to 502(a)(1)). Plaintiff relies on *DeSimone v. Transprint USA, Inc.*, 1996 WL 209951, 1996 U.S. Dist LEXIS 5700 (1996), for the proposition that 501(a)(1)(B) is available as a remedy for violations of Section 510. The *DeSimone* court raised the issue only briefly in passing to note that the plaintiff was not, in fact, seeking relief under 502(a)(1)(B) for his Section 510 claim. *Id.* 1996 WL 209951, at *3–4, 1996 U.S. Dist LEXIS 5700, at *9–10. Nothing in *DeSimone* can be read to imply that a plaintiff who alleges that she was fired in violation of Section 510 can recover pursuant to 501(a)(1)(B) when the literal terms of her ERISA plans establish that her benefits cease with the termination of her employment. In other words, § 501(a)(1)(B) is unavailing when the wrongful act for which the plaintiff seeks redress violates the strictures of Section 510 but not the terms of an ERISA plan.

■ Plaintiff also argues that she has sufficiently stated a claim for "appropriate equitable relief" under § 502(a)(3). She has not.

Section 502(a)(3) authorizes a civil action "by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan."

ERISA 502(a)(3) thus allows a plan participant "to obtain other appropriate equitable relief" to enforce any provisions of the ERISA statute, and is "the usual enforcement provision for an alleged violation of 510." *DeSimone*, 1996 WL 209951, at *3, 1996 U.S. Dist. LEXIS 5700 at *10. With respect to the scope of a district court's remedial powers under the provision, the Supreme Court explained in *Mertens v.*

*Hewitt Associates,* 508 U.S. 248, 251, 258 n. 8, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) that "Equitable relief must mean something less than all relief." The court held, instead, that the term "equitable relief" must refer to "those categories of relief that were typically available in equity." *Id.* at 256, 113 S.Ct. 2063. Compensatory damages and other traditional forms of legal relief are thus unavailable under Section 502(a)(3). *Id.* at 255, 113 S.Ct. 2063.

In *Great–West Life v. Knudson,* 534 U.S. 204, 214, 122 S.Ct. 708, 151 L.Ed.2d 635, the court held that restitution is not always an equitable remedy and a claim for restitution under § 502(a)(3) will not lie unless the action seeks "not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendants possession." In contrast, "almost invariably ... suits seeking ... to compel the defendant to pay a sum of money to the plaintiff are suits 'for money damages' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty." *Id.* at 210, 122 S.Ct. 708. Thus where a plaintiff seeks merely to recover from the general assets of the defendant, his claim is that of a general creditor and sounds in law rather than equity. *Id.* at 214, 122 S.Ct. 708. In *Sereboff v. Mid Atlantic Medical Services, Inc.,* —— U.S. ——, 126 S.Ct. 1869, 1874, 164 L.Ed.2d 612, the Supreme Court elaborated on the meaning of equitable restitution and held that a plaintiff who sought "specifically identifiable" funds that were "within the possession and control" of the defendants, namely that portion of a tort settlement due plaintiff under the terms of the ERISA plan, properly sought equitable relief for breach of contract under § 502(a)(3).

In *Pelosi v. Schwab Capital Markets, L.P.,* 462 F.Supp.2d 503, 513, 2006 U.S. Dist. LEXIS 85237 at *19 (S.D.N.Y. Nov. 17, 2006), plaintiff alleged discrimination in violation of Section 510 and sought relief under 502(a)(3) in the form of "the payment of compensation of at least equal to an additional 12–months severance pay, plus COBRA premium payments and other benefits." Plaintiff relied on *Strom v. Goldman, Sachs & Co.,* 202 F.3d 138, 144–45 (2d Cir.1999), which had held that, although strictly monetary, the recovery of proceeds that plaintiff would have received but for her late husband's ˙employer's breach of fiduciary duty in denying benefits, was a viable "make whole" equitable remedy under § 502(a)(3).

The *Pelosi* court held that plaintiff's ERISA 510 claim sought precisely the type of remedy the Supreme Court rejected as impermissible in *Great–West Life.* 462 F.Supp.2d 503, 513–14. *See Nicolaou v. Horizon Media, Inc.,* 2003 WL 22208356, at *1, 2003 U.S. Dist LEXIS 16706, at *2 (S.D.N.Y. Sept 23, 2003)(where plaintiff's ERISA 510 claim "did not seek reinstatement or any other form of equitable relief, but rather seeks only lost wages and other money damages" the court held that "Although previous Second Circuit precedent was to the contrary, *see, e.g. [Strom ],* the Supreme Court in *Great–West Life* denied that back pay is a form of equitable relief, stating instead that back pay may be part of an equitable remedy that includes the hiring and reinstatement of employees, but is not an equitable remedy in itself"); *see also Pereira v. Farace,* 413 F.3d 330, 339 (2d Cir.2005)(noting that the reasoning of *Great–West Life* "cuts across the grain of *Strom* " and that "several courts have already agreed that *Great–West* has overruled ... *Strom.*") Furthermore, the *Pelosi* court found that the plaintiff had adequately stated a claim to recover bene-

fits pursuant to ERISA 502(a)(1)(B) and, in effect, sought identical relief under 502(a)(3) for alleged discrimination in violation of Section 510. The court held that because adequate relief was available under 502(a)(1)(B), the relief sought pursuant to plaintiff's Section 510 claim was duplicative and dismissed the claim.

 In the present case, plaintiff seeks the restitution of at least $75,000, which she alleges defendant Duke should have contributed to her pension fund pursuant to the "collective agreements" between the parties. (Pl. Sur–Reply at 3). Her claim for "equitable restitution" under 502(a)(3) is thus another manner of seeking to recover the benefits she claims she is owed. Unlike the plaintiff in *Pelosi*, she cannot state a viable claim to recover benefits under 502(a)(1)(B) because under the terms of her ERISA plan she is owed none. Yet the inadequacy of relief under 502(a)(1)(B) does not transform what is, at bottom, a claim for compensation for defendants' breach of her Employment Agreement into a claim for equitable restitution. Plaintiff cannot point to any specific funds in the hands of the defendants on which she can assert a constructive trust. What she seeks is a classic remedy at law: compensatory damages for defendants' premature termination of her employment in breach of the Employment Agreement.[1]

 This analysis would apply equally to any claim for damages plaintiff could assert based on defendants' denial of health benefits. It would thus be futile for plaintiff to amend her first cause of action to plead her medical benefits plan.

Plaintiff's first and second causes of action are dismissed with prejudice.

## II. Section 502 ERISA Claim

 In her third cause of action, plaintiff seeks to recover pension and health benefits she claims are owed to her under the "1997 Benefits Agreement" and the Employment Agreement pursuant to Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). Section 502(a) provides that a civil action may be brought:

> (1) by a participant or beneficiary … (B) to recover benefits due to him *under the terms of his plan,* to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of his plan.

(emphasis added.) Obviously, no such claim exists with respect to the Employment Agreement because it is not an ERISA plan. And by its terms, the "1997 Benefits Agreement" requires defendant to pay plaintiff additional compensation (which, per her allegations, was deferred by being paid into a 401K plan) only as long as plaintiff remains in defendant's employ. Plaintiff is no longer in defendant's employ. She may have been terminated wrongfully, or in violation of her Employment Agreement, but she does not work for Duke any more, so the "1997 Benefits Agreement" no longer requires Duke to pay this additional compensation to plaintiff. Of course, if Duke breached plaintiff's Employment Agreement by firing her (see fourth cause of action below), then her damages for that breach may include an amount equivalent to what Duke would have contributed to her 401K plan if she had remained in its employ for

---

1. It should go without saying that plaintiff's Section 510 claim to recover damages "for the cost of litigating the unemployment insurance determination" is not a claim for equitable relief under Section 502(a)(3). Plaintiff is not seeking restitution of specific, identifiable funds the defendants have wrongly withheld from her. She is merely seeking compensatory damages for defendants' alleged breach of a legal duty.

the full five-year term of her contract. However, that does not convert her claim for breach of a non-ERISA contract into an ERISA claim.

■ As noted, plaintiff probably is covered by an ERISA-qualifying medical plan, though she does not plead that plan in her complaint. The Evidence of Coverage is attached to defendant's motion to dismiss. It establishes that it would be futile to permit plaintiff to amend her third cause of action to plead the medical benefits plan, because under the terms of that plan, her eligibility for benefits terminated when she ceased to be a Duke employee. (Evidence of Coverage, p.12–1, A.8.) For this reason, I cannot dismiss this claim without prejudice.

The third cause of action is dismissed with prejudice.

### III. State law claims

Plaintiff's fourth and fifth causes of action allege defendants breached the Employment Agreement and discriminated against plaintiff on the basis of her age in violation of New York State Human Rights Law. Both state a claim on which relief can be granted.

■ Since the court has determined that the Employment Agreement is not an ERISA-covered plan, plaintiff's state law breach of contract claim is not preempted by ERISA. See 29 U.S.C. § 1144(a). The elements of a breach of contract claim in New York are: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) non-performance by the other party; and (4) damages attributable to the breach. *See Marks v. New York Univ.*, 61 F.Supp.2d 81, 88 (S.D.N.Y.1999). Plaintiff has adequately pleaded these elements. She states that she was guaranteed employment on certain terms and conditions (and with certain benefits) for five years, but was fired after just five

months. Those allegations state a valid breach of contract claim under the Employment Agreement. As with any premature termination of employment, the value of benefits lost by virtue of the termination may be an element of damages for a proven breach.

■ Plaintiff has also stated a claim for age discrimination in violation of New York State Human Rights Law, N.Y. Executive Law § 296. In interpreting Executive Law § 296, New York courts follow the burden-shifting formula of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To establish a prima facie case of age discrimination under the statute, a plaintiff must demonstrate that she was in a protected age group; that she was terminated; that she was sufficiently qualified to continue holding her position; and that her position was subsequently filled by a younger person or held open for a younger person. *Ioele v. Alden Press*, 145 A.D.2d 29, 536 N.Y.S.2d 1000, 1003–1004 (1st Dept.1989). Plaintiff has adequately alleged the elements of a prima facie case of age discrimination under § 296. Because she relies only on state law, she need not establish that she has exhausted her administrative remedies.

■ However, this court has dismissed plaintiff's federal claims and declines to exercise supplemental jurisdiction over her state law claims. Plaintiffs claims for breach of contract and age discrimination in violation of New York State Human Rights Law, N.Y. Executive Law § 296 are hereby dismissed without prejudice. Plaintiff may bring these claims in the New York State Supreme Court. Furthermore, as noted above, she may claim as damages for breach of her Employment Agreement amounts the employer would have contributed to her pension plan—as

well as any other benefits she would have retained—if she had remained employed for the term of her Employment Agreement.

## CONCLUSION

Defendants' motion to dismiss is granted. Plaintiff's first, second, and third causes of action are dismissed with prejudice. Plaintiff's fourth and fifth causes of action are dismissed without prejudice.