**George MONTESANO, et al.**

v.

**XEROX CORP. RETIREMENT INCOME GUARANTEE PLAN, et al.**

**No. 399CV1197(AHN).**

United States District Court, D. Connecticut.

Aug. 22, 2000.

---

1. Plaintiff has not briefed anything to support Count Two. It is therefore deemed waived.

Donald L. Sapir, Victoria De Toledo, William Frumkin, White Plains, NY, for plaintiff.

Jeffrey Hellman, Risa Cherry, Bridgeport, CT, for defendant.

## RULING ON PENDING MOTIONS

NEVAS, District Judge.

The plaintiffs are former and current supplemental contract workers who perform services for the defendant, Xerox Corporation ("Xerox") through third-party leasing agencies. They bring this ERISA action on their own behalf and on behalf of a putative class of similarly situated individuals throughout the United States to, inter alia, recover benefits allegedly due them under Xerox's employee benefit plans.

Now pending before the court is Xerox's Rule 12(c), Fed.R.Civ.P., motion for judgment on the pleadings. Also pending is a motion to amend the complaint, which the plaintiffs filed in response to the 12(c) motion. The amended complaint addresses issues raised in Xerox's motion for judgment on counts two and three.

For the following reasons, the motion to amend the complaint [doc. # 31] is GRANTED. The motion for judgment on the pleadings [doc. # 19] is also GRANTED.

1. The five Xerox employee welfare benefit plans at issue are the Retirement Income Guarantee Plan (RIGP), the Employee Stock Ownership Plan (ESOP), the Profit Sharing

## STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Rule 12(c), Fed.R.Civ.P. A court may enter a judgment on the pleadings where the material facts are undisputed and a judgment on the merits is possible merely by considering the pleading's contents. *See Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir.1988). The legal standards governing the court's consideration of a Rule 12(c) motion are the same as those standards governing its consideration of a Rule 12(b)(6) motion to dismiss. *See George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir.1977). The court must accept as true the well-pleaded facts of the complaints and may not dismiss the action unless the court is convinced that the plaintiff can prove no set of facts which would entitle him to relief. *See Dahlberg v. Becker*, 748 F.2d 85, 88 (2d Cir.1984).

## FACTS

The plaintiffs assert that they are common law employees and have, since at least 1982, provided services to Xerox at its facilities in the Rochester, New York area through third-party staffing agencies such as TAD, Kelly, Man Power and Superior.

Xerox sponsors a number of employee benefit plans that provide medical, insurance, pension, savings and employee stock ownership benefits (the "Plans")[1] to certain of its employees. The plaintiffs claim that Xerox wrongfully failed to inform them of the existence of these Plans and to provide them benefits.

On two occasions in 1998, the plaintiffs filed claims with the Xerox plan administrator (the "Plan Administrator") for bene-

and Savings Plan (PSSP), the Rochester Medical Plan (RMP) and the Employee Life Insurance Program (ELIP).

fits under the Plans to which they claimed they were entitled. They claimed they were entitled to benefits because they were common law employees of Xerox and were not excluded from participation under the terms of the Plans. The Plan Administrator denied the claims. Their appeal of the Plan Administrator's decision was also denied.

The Plan Administrator found that the plaintiffs failed to meet the Plans' eligibility requirements because, *inter alia*, they were not on the Xerox payroll, they did not receive compensation from Xerox, and were "leased employees," a category that was excluded from coverage under the Plans.

In this action the plaintiffs appeal the Plan Administrator's decision and seek benefits under the Plans pursuant to § 502(a)(1)(B), ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B). In addition, the plaintiffs assert a claim under § 510 of ERISA, 29 U.S.C. § 1140, which prevents employers from interfering with an employee's rights to benefits. The plaintiffs claim that Xerox violated § 510 by adopting a policy restricting the use of supplemental contract workers to a maximum time of 18 continuous months. The plaintiffs also assert § 502(a)(3) claims for breach of fiduciary duty against the Plans' fiduciaries and individual Xerox directors under 29 U.S.C. §§ 1104(a) and 1132(a)(3), and for vacation pay under New York Labor Law § 193.

### DISCUSSION

Xerox asserts that the plaintiffs are not entitled to benefits because ERISA does not require employers to provide welfare or pension plans, but merely regulates those that an employer elects to sponsor. *See Shaw v. Delta Air Lines*, 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Thus, it maintains that an employer is free to include or exclude from coverage categories of contingent workers, such as leased employees, even if the workers meet the legal definition of common law

employee. Xerox argues that the plaintiffs' simplistic conclusion that common law employees can not be excluded from ERISA plans is wrong. Even if a worker is deemed to be a common law employee, Xerox maintains that the worker must also meet a plan's eligibility criteria to be entitled to benefits. *See Wolf v. Coca–Cola Co.*, 200 F.3d 1337 (11th Cir.2000) (holding that eligibility for participation in an ERISA plan depends on whether the person is an employee and also whether he satisfies the plan's eligibility requirements); *Bronk v. Mountain States Tel. & Tel., Inc.*, 140 F.3d 1335 (10th Cir.1998) (concluding that even if employees were common law employees they were excluded by the terms of the plan).

Xerox contends that the Plan Administrator carefully analyzed each Plan and correctly concluded that the plaintiffs did not meet its eligibility requirements. It maintains that the court should defer to the Plan Administrator's decision under an arbitrary and capricious standard of review. In opposition, the plaintiffs maintain that the court must review the Plan Administrator's decision de novo, and that, under de novo review, Xerox's motion must be denied and they should be allowed discovery and an opportunity to develop the record.

### II. *The Plan Administrator's Decision*

The Plan Administrator stated that she reviewed the Xerox Plan documents dating back to 1989 and that these documents indicated that eligibility had been limited to Xerox employees who were on the Xerox payroll and that leased employees and independent contractors were excluded. She concluded that Xerox never intended to provide benefits under the Plans to persons who provided services through third-party agencies. This intent was, she noted, reflected in Xerox's 1993 summary plan description ("SPD"), which expressly stated that independent contractors, leased employees, supplemental contract workers, consultants or any other third-party per-

sonnel who perform services for the company were neither eligible for, nor covered by, the Plans.

Specifically, the Plan Administrator denied benefits to the plaintiffs under the ESOP, the PSSP and the RIGP on the grounds that (1) they were not Xerox employees,[2] (2) they were not on Xerox's payroll and did not receive compensation from Xerox,[3] and (3) they were excluded as leased employees.[4]

2. The four relevant versions of the ESOP conferred eligibility on any "Employee of an Employer." Employee is defined as "any person on the payroll of the Company or an Affiliate who receives compensation from the Company...." Prior to 1995, the definition of employee expressly excluded "any leased employee within the meaning of Section 414(n)(2) of the [Internal Revenue] Code." On December 4, 1995, this language was revised to add that "[s]upplemental contract workers, leased employees or any other third party personnel, independent contractors, agents or consultants," and any person classified as such on the company's books and records were excluded from the definition of employee.

All six versions of the PSSP conferred eligibility on "Each Employee of the Employer" who satisfies certain length of service requirements. The 1998, 1997 and 1996 versions of the PSSP provide under the heading "Persons Not Considered Employees" that "[t]he following shall not be considered employees of the Employer, and thus shall not be eligible for participation under the Plan ... supplemental contract workers, Leased Employees, leased employees or any other third party personnel, independent contractors, agents or consultants ... [or anyone classified as such by the company on its books and records]." The 1993, 1989 and 1987 versions of the PSSP state, under the heading "Persons Not Considered Employees" that "a Leased Employee or independent contractor" is not eligible for participation under the Plan.

The 1998 and 1996 versions of the RIGP define "employee" as "[e]ach person employed as an employee by the Employer except ... [s]upplemental contract workers, Leased Employees, leased employees or other third party personnel, independent contractors, agents or consultants as so classified by the Company on its books and records, regardless of whether such persons may constitute employees under the common law." The 1993 and 1989 versions define "employee" as "[e]ach employee of the [company] ... except ... Leased employees and independent contractors."

3. Since 1989, the PSSP defined compensation "with respect to Participants paid through the Company's Rochester payroll system, the total of amounts paid during which time the employee was an eligible Participant ... and classified under [a specifically identified] payroll earnings codes established by the Company." In 1989, compensation of a participant was defined as "the total amount reported for the portion of such calendar year during which he is a Participant to the federal government for withholding tax purposes...."

The ESOP defines "Compensation" as having the same meaning as set forth in the PSSP.

The RIGP defines "Compensation" as "the total amount reported by the Employer to the Federal Government for withholding tax purposes."

4. As previously noted, prior to 1995, leased employees "within the meaning of § 414(n)(2) of the [IRC]" were excluded from the definition of employee in the ESOP. After 1995, the definition of employee excluded "[s]upplemental contract workers, leased employees or any other third party personnel, independent contractors, agents or consultants" and any person classified as such on Xerox's books and records.

The 1998 and 1997 versions of the PSSP define "Leased Employee" as any individual who "(a) is not an independent contractor with respect to the Employer; (b) provides services pursuant to an agreement between the Employer and any other person or entity; (c) has performed such services on a substantially full-time basis for a period of at least one year; and (d) performs such services under primary direction or control by the Employer." Prior to 1997, the definition was the same except for clause (d), which stated "performs services of a type historically performed in the business field of the Employer by employees."

In the four relevant versions of the RIGP, a Leased Employee is defined as "[a]ny individual who (a) is not an independent contractor with respect to the Employer; (b) provides services pursuant to an agreement between the Employer and any other person or entity (hereinafter referred to as the leasing organization"); (c) has performed such services on a substantially full-time basis for a period of at least one year; (d) performs such services under the primary direction and control of the Employer. Prior to 1997, the definition was the same except for clause (d), which

The Plan Administrator found that the plaintiffs did not receive compensation from Xerox because the term was historically defined as the amount reported by Xerox to the federal government for withholding tax purposes and was presently defined as amounts paid under Xerox's specific payroll codes. Thus, because Xerox did not report any amount to the federal government for the plaintiffs, and because they were not paid pursuant to any of Xerox's payroll codes, the Plan Administrator concluded that they did not receive "compensation" and were thus not employees of the company.

The Plan Administrator also relied on the fact that the Plans specifically excluded leased employees from the definitions of "employee". She noted that the intent to exclude leased employees was clarified in 1995, when the ESOP and PSSP plans were amended to state that, in addition to leased employees, supplemental contract workers, other third-party personnel and anyone Xerox classified as such were excluded. She stated that these amendments were designed as a proactive measure to avoid claims for benefits from workers who were never intended to be covered under the Plans.

Her decision with respect to all the Plans was also based on language in the 1993 SPD which expressly provided that independent contractors, including leased employees, supplemental contract workers, consultants or other third-party personnel were not eligible nor covered by the Plans.[5] She also concluded that they were not eligible under the pre–1993 SPD because they were not regular employees.

The Plan Administrator's decision that the plaintiffs were not covered under the RMP or the ELIP was based on the language in the SPDs and the policies of insurance.[6] She concluded that the plaintiffs were not eligible for the RMP because they were not considered "regular employees," had not been identified as eligible, were not members of the group arranging for coverage, and no insurance contract was ever issued on their behalf. She further found that the plaintiffs were not eligible for the ELIP because they were excluded under the SPDs because they were not "salaried employees," and were also not eligible under the insurance contracts.[7]

stated "performs services of a type historically performed in the business field of the Employer by employees."

5. Prior to 1993, the SPD limited coverage to "regular employees." In 1993, the SPD added that "[i]ndependent contractors, including (without limitation) leased employees, supplemental contract workers, consultants, or any other third party personnel who perform services for the company, are neither eligible for nor covered by the plans and programs summarized herein."

6. With respect to coverage for medical benefits under the RMP, the 1993 SPD provided "You're eligible to participate ... if you are a regular, full-time salaried employee of Xerox or a part-time salaried employee working at least 30 hours per week." The pre–1993 SPD provided coverage for "regular employee[s] of Xerox working at least 30 hours a week."

The contract issued by Blue Cross & Blue Shield in 1986 provided "You, the person whose name appears on the Identification Card are covered under this contract." In 1992, the contract stated "The person to whom this contract is issued is covered." In 1996, the contract said, "You, the member of the group who arranged for your coverage are covered."

7. The various group insurance contracts that were in effect throughout the relevant years contained different language pertaining to eligibility. For instance, one policy stated that coverage was provided to all regular full-time and part time Xerox salaried employees who are employed and paid for services by Xerox and who work at least 20 hours per week. Other policies contained similar language stating that coverage was provided for employees who received an "annual salary paid by the Company," or "full-time nonbargaining employees who are directly employed and compensated for services by the employer in the United States," or "Xerox employees" who met the length of service requirements, or "regular Xerox salaried employees who are employed and paid for services by the Employer," or "all regular full time and part time Xerox salaried employees who are paid for services by the Employer."

In addition, the Plan Administrator's decision with respect to all Plans was based in part on the agreements between Xerox and the staffing agencies and the agreements between the staffing agencies and the plaintiffs. These agreements provided that the staffing agency "would be responsible for all employer obligations, including withholding and compliance with all employment laws applicable to their employees," and in certain instances, provided that the agencies would make benefit plans available to the plaintiffs, including 401(k) plans. Also, the plaintiffs acknowledged in these agreements and other documents entitled "requests for extension of service as contract workers" that they were employees of a staffing agency, not employees of Xerox and that they were not entitled to Xerox benefits.

### III. Scope of Review of the Plan Administrator's Decision

The first area of contention between the parties is the standard of review that the court is to apply to the Plan Administrator's decision. Xerox maintains that the arbitrary and capricious standard applies. The plaintiffs claim that the court must conduct a de novo review.

■ As a general rule, a denial of benefits is to be reviewed by the court de novo unless the plan gives the administrator or fiduciaries discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When a plan grants discretion to the administrator, the scope of review is narrow and highly deferential to the plan administrator's decision. *See Jordan v. Retirement Committee of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995). Her decision should not be disturbed unless its conclusions are arbitrary and capricious. *See Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995). The district court may not substitute its judgment for that of the plan administrator.

*See id.* The party seeking deferential review must prove that the arbitrary and capricious standard applies. *See Sharkey v. Ultramar Energy, Ltd.,* 70 F.3d 226, 230 (2d Cir.1995).

■ Under this discretionary standard, the court may overturn a plan administrator's decision to deny benefits if there was a "clear error of judgment." *Jordan,* 46 F.3d at 1271. A clear error of judgment exists if the decision was without reason, unsupported by substantial evidence or erroneous as a matter of law. *See Pagan,* 52 F.3d at 442. Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached ... [and] requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund,* 72 F.3d 1066, 1072 (2d Cir.1995). A decision is arbitrary and capricious only when the decisionmaker "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence ... or is so implausible that it would not be ascribed to difference in view or the product of ... expertise." *Motor Vehicle Mfrs' Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *see also Kinstler v. First Reliance Standard Life Ins. Co.,* 181 F.3d 243, 248 (2d Cir.1999) (noting that a denial of benefits is arbitrary and capricious where a plan administrator has "imposed a standard not required by the plan's provisions" or interpreted the plan in a manner inconsistent with its plain words) (*quoting O'Shea v. First Manhattan Co. Thrift Plan & Trust,* 55 F.3d 109, 112 (2d Cir.1995)).

■ When applying the de novo standard, courts must decide for themselves what a term means, instead of deciding whether the plan administrator's construction was reasonable. *See Firestone,* 489 U.S. at 110–11, 109 S.Ct. 948. In de novo review, the court must apply traditional

principles of contract interpretation. *See Sharkey v. Ultramar Energy Ltd.*, 70 F.3d at 230; *Masella v. Blue Cross & Blue Shield of Ct., Inc.*, 936 F.2d 98, 107 (2d Cir.1991). When a plan does not give the administrator discretion, the court must apply de novo review to the administrator's interpretation of the plan as well as to her factual determinations. *See Kinstler*, 181 F.3d at 250–51.

### A. *Discretion Conferred By The Plans*

Xerox contends that the arbitrary and capricious standard of review applies because the plan documents confer discretion on the Plan Administrator. It relies on language in the documents governing the ESOP, PSSP and RIGP plans, which expressly provide that the Plan Administrator has authority to construe disputed or doubtful terms and to determine eligibility for benefits. With respect to the RMP and ELIP, Xerox maintains that the governing document is the SPD, because it is the only document prepared by Xerox, and that it provides that the Plan Administrator has "the exclusive right to interpret the appropriate plan provisions."

In response, the plaintiffs contend that de novo review is applicable because the Plans do not give the administrator the authority to determine eligibility for benefits or to construe the terms of the plans. They argue that, even if such discretion is given, the de novo standard applies because the Plan Administrator was influenced by a conflict of interest and because her decision turned on a question of law.

■ Contrary to the plaintiff's assertion, the court concludes that the Plans properly reserve discretion in the Plan Administrator. *See Jordan*, 46 F.3d at 1271 (noting that while the words "discretion" and "deference" may not be absolutely necessary to avoid de novo review, the use of such words is "certainly helpful in deciding the issue"); *see also Kinstler*, 181 F.3d at 251 (noting that in cases where the court has deemed the arbitrary and capricious standard applicable, the language re-

serving discretion was clear, i.e., where the plan explicitly provided that the trustees had authority to "resolve all disputes and ambiguities relating to the interpretation of the plan").

Here, the ESOP provides that the Plan Administrator may "construe the Plan" and has the power "to determine all questions relating to the eligibility of employees to participate in the Plan," and to "interpret the provisions of the Plan." The PSSP provides that the Plan Administrator "may construe the Plan ... and resolve any ambiguity with respect thereto and her constructions thereof and her action thereunder, made and taken in good faith, shall be final and conclusive." It also provides "[a]ny question as to the eligibility of any employee to become a Participant ... shall be determined by the Plan Administrator in accordance with the terms of the Plan." The RIGP provides that "the Administrator shall construe the Plan ... and resolve any ambiguity with respect thereto." The 1993 SPD provides that the "Plan Administrator (or designee) has the exclusive right to interpret the appropriate plan provisions: its decisions are conclusive and binding."

The court's conclusion that this language is sufficient to confer discretion on the Plan Administrator is consistent with the conclusions reached by other courts in cases involving Xerox plans. *See Crocco v. Xerox Corp.*, 137 F.3d 105 (2d Cir.1998) (upholding district court's review of the Xerox plan administrator's denial of benefits under arbitrary and capricious review); *Layaou v. Xerox Corp.*, 69 F.Supp.2d 419 (W.D.N.Y.1999) (finding that the language in Xerox's RIGP conferred discretion and that court should review the plan administrator's denial of RIGP benefits under arbitrary and capricious standard);

In reaching this decision, the court has considered and rejected the plaintiffs' claim that the insurance contracts, not the SPD govern the scope of review that is applicable to the RMP and ELIP. *See*

*Friedman v. Consolidated Edison Co.*, No. 97Civ2735(DLC), 1999 WL 511962, *14 (S.D.N.Y. July 20, 1999) (rejecting argument that insurance contracts rather than SPD govern the terms of an ERISA insurance plan on grounds that the contracts are agreements between an insurer and an employer and do not purport to set up an ERISA plan) (citing *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir.1990) (finding language in SPD to be controlling where it is the only document distributed to employees and the only document on file with the Secretary of Labor)); *Wojciechowski v. Metropolitan Life Ins. Co.*, 75 F.Supp.2d 256 (S.D.N.Y.1999) (rejecting claim that arbitrary and capricious review was not appropriate even though the SPD gave discretion to administrator and noting that the plaintiff had no authority to support a contrary conclusion). In addition, the settlor's intent to confer such discretion on the Plan Administrator is unambiguously expressed in the SPD. Such an expression of intent is compelling. *See Frank v. Colt Indus. Inc.*, 910 F.2d 90, 98–99 (3d Cir. 1990).

Accordingly, based on the language of the Plans and the SPDs, the applicable scope of review is arbitrary and capricious.

### A. *Conflict of Interest*

■ The court finds no merit in the plaintiffs' assertion that the Plan Administrator's decision must be reviewed de novo because the facts that the Plans are unfunded and the Plan Administrator is an employee of Xerox creates a conflict of interest. Plaintiffs reliance on *DeFelice v. American Int'l Life Assur. Co.*, 112 F.3d 61, 65 (2d Cir.1997) in support of this claim is misplaced. In *DeFelice,* the Second Circuit held that, where de novo review is the applicable standard, the district court is limited to the administrative record unless the plaintiff demonstrates a conflict of interest in the administrative reviewing body. *See id.* at 66 (finding that the administrator of an unfunded plan had a conflict of interest by virtue of her employ-

ment with the sponsoring company). *DeFelice* expressly stated, however, that its holding was to be distinguished from previous Second Circuit opinions dealing with a conflict of interest in cases where arbitrary and capricious review was applicable. *See id.* *See also Whitney v. Empire Blue Cross & Blue Shield,* 106 F.3d 475, 476 (2d Cir.1997); *Sullivan v. LTV Aerospace & Defense Co.,* 82 F.3d 1251, 1255–56 (2d Cir.1996).

In *Whitney* and *Sullivan,* the Second Circuit held that, where arbitrary and capricious review would otherwise apply, a demonstrated conflict of interest does not require de novo review unless the evidence shows that the administrator was in fact influenced by the conflict. *See Sullivan* 82 F.3d at 1256; *Whitney,* 106 F.3d 475; *see also DeFelice,* 112 F.3d at 65 (noting that *Sullivan* binds the Second Circuit to its rejection in *Pagan v. NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995), of the requirement that a fiduciary must prove its interpretation was not tainted by self interest if a beneficiary demonstrates the existence of a substantial conflict of interest on the fiduciary's part).

■ Thus, where, as here, arbitrary and capricious review is applicable "a reasonable interpretation of the Plan will stand unless the participants can show not only that a potential conflict of interest exists . . . but that the 'conflict affected the reasonableness of the [administrator's] decision.'" *Sullivan,* 82 F.3d at 1259 (quoting *Pagan v. NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995)); *see also Whitney,* 106 F.3d at 476.

The plaintiffs do not allege any facts supporting the existence of a conflict. They rely only on the supposition that there is a per se, inherent conflict whenever the plan administrator of an unfunded plan is employed by the plan sponsor. They also do not allege facts indicating that any such potential conflict affected the reasonableness of the Plan Administrator's decision. *See Sullivan,* 82 F.3d at 1259; *Mers v. Marriott Int'l Group Acc., Death*

& *Dismemberment Plan*, 144 F.3d 1014 (7th Cir.) (presuming plan administrator is neutral unless claimant shows specific evidence of actual bias), *cert. denied*, 525 U.S. 947, 119 S.Ct. 372, 142 L.Ed.2d 307 (1998).

Accordingly, any potential conflict of interest that might exist because the Plan Administrator is an employee of Xerox has, without more, no bearing on the court's conclusion that arbitrary and capricious review is the applicable standard in this case. *See Durr v. Metropolitan Life Ins. Co.*, 15 F.Supp.2d 205, 210 (D.Conn. 1998); *Shapiro v. Joint Indus. Bd. of the Elec. Indus.*, 858 F.Supp. 356, 360 (E.D.N.Y.1994).

### B. *Determination of Legal Issue*

The plaintiffs also contend that de novo review is required because the Plan Administrator determined legal questions in reaching the conclusion that the plaintiffs were "leased employees" and were not "employees of Xerox." Specifically, they assert that the Plans' definition of "leased employee" incorporated by reference the Internal Revenue Code's ("IRC") definition of "leased employee," and that the Plan Administrator made a legal determination when she applied the IRC's definition of "leased employee" to the Plans' definition of the term. The plaintiffs also claim that the Plan Administrator's decision turned on a legal question because she determined that the plaintiffs were not common law employees and because she interpreted the agreements between the plaintiffs and Xerox as constituting waivers by the plaintiffs of their rights to ERISA benefits.

The plaintiffs are correct that de novo review is proper where a plan administrator's decision rests on a legal interpretation. *See Weil v. Retirement Plan Admin. Comm. of Terson Co.*, 913 F.2d 1045, 1048 (2d Cir.1990) (holding that de novo review is required in the unique situation where a plan administrator's decision turns on a question of law). But there are significant differences between plan interpretation and legal interpretation, and de novo review is required only if a plan administrator decided a legal question.

When a plan administrator construes ERISA or other federal laws and regulations to determine the law's substantive eligibility requirements, she is making a legal determination. For instance, in *Weil*, the administrator made a legal determination that non-vested employees were not entitled to vested retirement benefits because there had not been a "partial termination" within the meaning of the treasury regulations. In reaching that decision, the plan administrator did not construe a plan term, but construed a treasury regulation that required immediate vesting of all retirement benefits whenever an ERISA plan was "terminated" or "partially terminated." [8] Because the decision involved a determination of what constituted a "partial termination" within the meaning of the treasury regulation, the administrator's decision turned on a legal interpretation and de novo review was required, despite the fact that the plan gave the administrator discretionary authority to construe the plan and determine eligibility. *See id.; see also Penn v. Howe–Baker Eng'rs, Inc.* 898 F.2d 1096, 1099 n. 3 (5th Cir.1990) (noting that de novo review is required where a plan ad-

8. In *Weil*, the ERISA plan received favorable tax treatment because it provided that all retirement benefits would vest immediately upon partial termination of the plan, even for employees who had not satisfied the plan's 10-year service requirement for vesting. When the company reorganized, 100 of the plan's 395 participants were terminated. The terminated employees who did not have 10 years of service sought benefits, claiming that

there had been a "partial termination" under the treasury regulations. The plan administrator denied benefits based on her construction of the term "partial termination" in the regulation. The Second Circuit held that the district court properly reviewed the administrator's denial of benefits under a de novo standard because the decision turned on a question of law. *See* 913 F.2d at 1048.

ministrator interprets a statute or regulation because private parties' legal decisions are not entitled to deference); *Cf. Board of Trustees of Equity–League Pension Trust Fund v. Royce,* 98 Civ. 8703, 1999 U.S.Dist. Lexis 11927, 1999 WL 587796 (S.D.N.Y. Aug. 5, 1999) (applying de novo review despite plan's reservation of discretion in administrator where administrator's decision was based on an interpretation of a treasury regulation that pertained to a spouse's right to survivor benefits).

▪ Here, the Plan Administrator's determination that the plaintiffs were excluded from benefits was based on an interpretation of Plan terms, not an interpretation of ERISA or the IRC. Merely because one of the Plans' definition of leased employee incorporated by reference the IRC's definition of that term does turn plan interpretation into legal interpretation, even if the Plan Administrator referred to the IRC's definition as an aide in interpreting a Plan term. *Weil* does not compel a contrary conclusion.

The court is not persuaded otherwise by *Burrey v. Pacific Gas & Elec. Co.,* 159 F.3d 388 (9th Cir.1998). In *Burrey,* the plan at issue provided that benefits were available to "employees," but that "a leased employee as defined by Section 414(n)(2) of the Internal Revenue Code shall not be considered an Employee eligible to become a participant in the Plan." The Ninth Circuit held that de novo review was required because "the retirement plan incorporated by reference the determination of benefits based on an interpretation of IRC § 414(n), defining 'leased employees,'" and thus the plan administrator's decision involved a question of law. See *Burrey,* 159 F.3d at 391.

Assuming *Burrey* was correctly decided, it is distinguishable and is not controlling here. In *Burrey,* the plan administrator's decision turned on a legal determination of

whether the plaintiffs had standing. Here, standing is not an issue. Moreover, even assuming the Xerox Plan Administrator's decision required her to interpret a federal regulation, her decision did not turn on that legal interpretation. It was only a minor factor in her decision with respect to one Plan, the ESOP, for the years before 1995.[9]

The court is also not persuaded by the plaintiffs' claim that the Plan Administrator's decision must be reviewed de novo because she made a legal determination that the agreements between the plaintiffs and the staffing agencies constituted waivers by the plaintiffs of their right to ERISA benefits. *See Finz v. Schlesinger,* 957 F.2d 78 (2d Cir.1992) (noting that an individual can waive his right to participate in an ERISA pension plan only if his waiver is knowing and voluntary and that the validity of a waiver of pension benefits is subject to closer scrutiny than his waiver of general contract claims). It was appropriate for the Plan Administrator to refer to the language in these agreements as one of many factors in her decision. *See Trombetta,* 102 F.3d at 1438 (noting that it was not arbitrary and capricious for administrator to rely on fact that the plaintiffs signed agreements designating themselves as independent contractors for all purposes). Once again, the Plan Administrator's decision did not turn on a determination that the plaintiffs waived their right to benefits. The agreements were only one factor in the Plan Administrator's decision, and merely because she referred to them does not compel de novo review.

▪ In conclusion, there is no conflict of interest or other valid reason why the court should disregard the clear and unambiguous language in the Plans at issue that confer discretion on the Plan Administrator to determine eligibility and to construe plan terms. Accordingly, because

---

9. Notably, only the 1989 and 1993 versions of the ESOP incorporated by reference the IRC's definition of leased employee.

the arbitrary and capricious standard applies, the court is limited in its review of the Plan Administrator's decision to consideration of the evidence in the administrative record. *See Miller,* 72 F.3d at 1071; *see also DeFelice,* 112 F.3d at 64–66 (noting that even when a district court applies de novo review, "the review is ... limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence").

## II. *Review of the Plan Administrator's Decision*

Turning to the substance of the motion, Xerox maintains that the Plan Administrator's decision is not arbitrary and capricious or contrary to law, even if the plaintiffs are deemed to be common law employees, because they do not satisfy the Plans' express eligibility requirements. The court agrees.

 ERISA imposes two requirements for participant status: (1) the person must be an employee, and (2) the person must, according to the language of the plan itself, be eligible to receive benefits. The first prong requires an independent review by the court of the employment relationship. The second requires examination of the terms of the ERISA plan. *See Wolf v. Coca–Cola Co.,* 200 F.3d 1337, 1340 (11th Cir.2000). An individual who fails either prong is not entitled to benefits. *See id.*

 Assuming for purposes of this motion that the first prong of the analysis is satisfied because the plaintiffs must be deemed common law employees, they would only be eligible for benefits if they satisfied the Plans' eligibility requirements. *See Capital Cities/ABC, Inc. v. Ratcliff,* 141 F.3d 1405, 1412 (10th Cir.), *cert. denied,* 525 U.S. 873, 119 S.Ct. 173, 142 L.Ed.2d 141 (1998) (holding that the term "eligible" can only be logically construed as covering just a sub-group of employees because it would be superfluous if it were read to include all common law

employees); *Trombetta,* 102 F.3d at 1439 (noting that a determination that an employee is a common law employee is not dispositive because employers are free to exclude classes of employees from ERISA plans). Indeed, the vast majority of cases that have considered this issue have held that ERISA allows employers to limit plan participation to certain employees while excluding others. *See, e.g., Abraham v. Exxon Corp.,* 85 F.3d 1126, 1130 (5th Cir. 1996); *Clark v. E.I. Dupont De Nemours & Co.,* 1997 WL 6958 at \*4; *Wolf v. Coca–Cola Co.,* 200 F.3d at 1337. In this case, the Plan Administrator conducted a reasoned analysis of the Plans' eligibility requirements and concluded that the plaintiffs did not meet them. Her decision is not arbitrary and capricious.

The Plan Administrator concluded that the Plans directly tied eligibility to the employee's receipt of compensation from Xerox. She found that the plaintiffs did not meet the Plans' "on the payroll" and "compensation" requirements because they did not receive their paychecks from Xerox, but were paid by the temporary agencies, and that no amounts paid to them fell under any of Xerox's relevant payroll codes. In reaching this conclusion, the Plan Administrator properly relied on the company's historical definition of compensation, which was the amount reported by the company to the federal government for withholding tax purposes. Her conclusion is not unreasonable. *See Clark v. E.I. Dupont De Nemours & Co.,* No. 95–2845, 1997 WL 6958, at \*2–4 (4th Cir. Jan.9, 1997), *cert. denied,* 520 U.S. 1259, 117 S.Ct. 2425, 138 L.Ed.2d 188 (1997) (upholding on arbitrary and capricious review, a plan administrator's decision that a leased employee, even if deemed a common law employee, was excluded under an ERISA plan that tied eligibility to employees who were on the company payroll and that expressly excluded leased employees); *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan,* 24 F.3d 1491, 1499 (3d Cir.1994) (upholding plan administrator's decision that the

plaintiff was entitled to pension benefits calculated only on salary, not on salary and bonuses, because bonuses were clearly excluded under the terms of the plan).

There is no merit to the plaintiff's argument that the Plan Administrator incorrectly determined that they were not on Xerox's payroll because the common and popular definition of the term "payroll" is the total number of people employed by a business. This argument is only persuasive or relevant where the court applies de novo review. In arbitrary and capricious review, the court is bound by the plan administrator's construction of plan terms unless it is clearly erroneous. *Cf. Firestone*, 489 U.S. at 110–11, 109 S.Ct. 948.

The court also rejects the plaintiffs' argument that the Plan Administrator's interpretation of "payroll" as the amount reported to the federal government for withholding tax purposes was improper because it imputes to Xerox an illegal purpose of avoiding its duties to make FICA contributions for the plaintiffs who were common law employees. This argument erroneously assumes that the plaintiffs are, in fact, common law employees for whom Xerox is required to make FICA contributions. *Cf. Vizcaino v. Microsoft Corp.*, 120 F.3d 1006 (9th Cir.1997). There has been no finding in this case by the IRS that the plaintiffs are common law employees for whom Xerox was required to make FICA contributions. They are only considered as such for purposes of this Rule 12(c) motion.

The Plan Administrator's decision is further supported by express language of the ESOP, PSSP and RIGP Plans that excludes leased employees and, after the ESOP and PSSP were amended in 1995, independent contractors, supplemental contract workers, other third party personnel and anyone so designated by Xerox.

Her decision is also supported by the language in the RIGP which, beginning in 1995, expressly excludes common law employees.

Under arbitrary and capricious review the court must defer to the Plan Administrator's construction of the term "leased employee" as well as to her conclusion that the plaintiffs fit that definition because they were individuals who provided services pursuant to agreements between Xerox and various employee leasing agencies. *See Bielkie v. General Motors Corp.*, No. 98–1873, 1999 WL 644336 (6th Cir. Aug.19, 1999) (upholding plan administrator's decision that "per diem" worker, even though her work pattern was consistent with that of full-time employees, was not covered because the plan clearly excluded per diem workers).

The fact that the pre–1995 ESOP incorporates IRC § 414(n)(2)'s definition of leased employee [10] does not compel a contrary conclusion. The import of this Plan provision is that leased employees such as the plaintiffs must be treated as employees. It does not create any substantive rights to which the plaintiffs would not otherwise be entitled under the terms of the Plans. *Accord Bronk*, 140 F.3d at 1339–40.

The Ninth Circuit's decision in *Burrey v. Pacific Gas & Elec. Co.* 159 F.3d 388 (9th Cir.1998), does not render erroneous the Plan Administrator's decision, even if she incorrectly concluded that the plaintiffs were excluded from the pre–1995 ESOP because they were leased employees. In *Burrey*, the court held that common law employees could not be considered leased employees under the IRC's definition of leased employee and thus could not be excluded on the ground that they were leased employees. But the narrow holding

---

10. Section 414 of the IRC is one of several sections of the Code that deals with minimum participation requirements, vesting and funding standards that must be satisfied in order for an employee pension benefit plan to receive favorable tax treatment. Thus, solely for tax purposes, § 414 expands the scope of the term employee to include leased employees as well as payroll employees. *See Clark v. E.I. Dupont De Nemours & Co.*, No. 95–2845, 1997 WL 6958, *3 and n. 2 (4th Cir. Jan.9, 1997).

in *Burrey* does not mean that leased workers can not, under any circumstances, be excluded from ERISA plans. Thus, even under *Burrey*, the Plan Administrator's decision is not erroneous because she also found that the plaintiffs did not satisfy the other Plan requirements.

Contrary to the plaintiff's argument, the court does not agree that *Renda v. Adam Meldrum & Anderson Co.*, 806 F.Supp. 1071, 1081 (W.D.N.Y.1992), requires it to find the Plan Administrator's decision is arbitrary and capricious. In *Renda*, the district court held that the plaintiff, who worked for a company that leased space in the defendant's store, was a common law employee of the store and could not be excluded from the store's ERISA plan despite the plans' exclusionary language. It held that the plan's definition of employee was governed by IRC § 414(n)(2), and under that definition the plaintiff was a common law employee who could not be excluded because § 202(a) of ERISA, the minimum participation requirement,[11] prohibits discrimination among employees who can participate in an ERISA plan. *See id.* at 1081.

*Renda* has been criticized and has not been followed. *See Abraham v. Exxon Corp.*, 85 F.3d 1126, 1130 (5th Cir.1996); *Bronk v. Mountain States Tel. & Tel., Inc.*, 140 F.3d 1335, 1339 (10th Cir.1998); *see also*, Gregory Padgett, Litigants Trying To Implicitly Incorporate Treas. Regs. Into ERISA May Have Little Luck In Court, 7 J. Tax'n Employee Benefits 3 (Jan/Feb 2000) (noting that *Renda* employed a novel and unnecessary application of a treasury regulation to support its position and to create substantive rights under ERISA).

■ ERISA's minimum participation requirement only forbids employers from denying participation on the basis of age or length of service. It does not prevent employers from denying participation on any other basis. *See Abraham v. Exxon Corp.*, 85 F.3d at 1130. As the Fifth Circuit stated, treasury regulations do no more than determine whether a plan is a qualified tax plan. "Failure to meet the requirements of those regulations results in the loss of a beneficial tax status, it does not create substantive rights under ERISA" requiring leased employees to be covered under all ERISA plans. *See id.* Rather, "absent explicit indication by Congress, the tax-qualification provisions of the Code do not rewrite ERISA pension plans to mandate inclusion of leased employees whom the plans have permissibly excluded." *Bronk*, 140 F.3d at 1339–40.

Even the language of § 202 supports this conclusion. Section 202(a)(4) imposes a deadline by which a plan must admit an employee who satisfies the minimum age and length of service requirements of § 202(a)(1)(A) and who is otherwise entitled to participate in the plan. "This [otherwise entitle to participate] language would be superfluous unless Congress intended that plans could impose other participation requirements besides age and length of service." *Bronk*, 140 F.3d at 1338.

The court also finds that the plaintiffs' reliance on *Crouch v. Mo–Kan Iron Workers Welfare Fund*, 740 F.2d 805, 809 (10th Cir.1984), is misplaced. The plan at issue in *Crouch* provided that it was to be construed to meet the requirements of ERISA and the IRC. Thus, for that plan to qualify as a tax deductible pension plan, it had to be construed as including the plaintiff as a participant. There is nothing in *Crouch* that requires a plan that does not contain such language to be construed in a manner that satisfies the IRC's requirements. *See Bronk*, 140 F.3d at 1339 (holding that the tax qualification provisions of the IRC do not require inclusion

---

11. Section 202(a) of ERISA, 29 U.S.C. § 1052(a), provides that no pension plan may require, as a condition of participation, that an employee complete a period of service

with the employer extending beyond the latter of the date on which the employee reaches the age of 21 or the date on which the employee completes one year of service.

of employees who are permissibly excluded from participation in ERISA plans).

■ There is also not merit to the plaintiffs' argument that *Nationwide Mut. Ins., Co. v. Darden,* 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) requires all common law employees to be covered under an ERISA plan. *Darden* involved construction of the term "employee" as used in ERISA. But neither *Darden* nor ERISA require a defined term such as "employee" in an ERISA plan to carry the same definition as that ascribed to it by the Court in *Darden. See Trombetta,* 102 F.3d at 1439 To the contrary, an employer is free to define the terms in its plans however it wishes. *Id.*

Moreover, the Microsoft decisions do not support the plaintiffs' position. *See Vizcaino v. Microsoft Corp.,* 97 F.3d 1187 (9th Cir.1996) (*Vizcaino I* ); *Vizcaino v. Microsoft Corp.,* 120 F.3d 1006 (9th Cir. 1997) (en banc) (*Vizcaino II* ). At issue there was an ERISA plan that provided "[e]ach employee ... was eligible to participate." The plan defined "employee" as "any common law employee who receives remuneration for personal services rendered to the employer and who is on the United States payroll of the employer." 97 F.3d at 1192. On appeal of the Microsoft plan administrator's denial of benefits, the court rejected her conclusion that freelance employees were not common law employees because Microsoft had conceded that fact to the IRS. However, because the Microsoft plan also required workers to be on Microsoft's "United States payroll," the court referred the matter back to the plan administrator so that she could determine in the first instance whether the plaintiffs met that requirement. *See Vizcaino II,* 120 F.3d at 1192.

■ The court also finds no merit to the plaintiffs' claim that the Plan Administrator improperly based her decision on "historical" definitions of plan terms. Doing so does not violate ERISA's requirement that an employer must furnish participants with a SPD describing circumstances that could result in their disqualification. In *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.,* 37 F.3d 55, 61 (2d Cir.1994), the Second Circuit noted that the administrator's decision was not arbitrary and capricious where the factors she considered included the language, general purpose, history and prior interpretations of the plan.

■ The court also disagrees that the Plan Administrator erred in relying on the provisions of the SPD. The law in the Second Circuit is that, as a general rule the SPD controls even if it conflicts with the terms of a plan unless there is actual prejudice. *See Stang v. American Express Co.,* 93Civ.6615 (JFK), 1998 WL 118160, 1998 U.S.Dist. Lexis 3138 (S.D.N.Y. Mar. 16, 1998) (citing *Heidgerd,* 906 F.2d at 907–08, which held that descriptions in the SPD are controlling because "it is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous plan document and then proclaim that any inconsistencies will be governed by the plan)"; *see also Degrooth v. General Dynamics Corp.,* 837 F.Supp. 485, 488 (D.Conn.1993) (noting the absence of authority for the proposition that an SPD does not govern the rights of parties if it is not in perfect procedural compliance with ERISA requirements), *aff'd,* 28 F.3d 103 (2d Cir.1994).

■ The fact that the plaintiffs were not provided copies of the SPD does not render erroneous the Plan Administrator's reliance on its provisions. The reporting and disclosure sections of ERISA provide that a SPD must be furnished to each participant covered under an ERISA plan and to any beneficiary receiving benefits under such plan. *See* 29 U.S.C. § 1021(a)(1). Even if the plaintiffs were required by this section to receive a copy of the SPD, technical violations of this disclosure section does not create any substantive rights under ERISA. In order to

have a claim for a technical violation, a plaintiff must demonstrate extraordinary circumstances such as bad faith, active concealment or detrimental reliance. *See Herter v. Dick's Clothing & Sporting Goods, Inc.,* 58 F.Supp.2d 306, 310 (S.D.N.Y.1999).

The court also finds that it was permissible for the Plan Administrator to refer to the 1995 amendment to the RIGP which expressly excluded common law employees. Contrary to the plaintiffs' claim, this amendment does not constitute an admission that common law employees were not excluded under the previous versions of the Plan. As the Plan Administrator noted, an internal Xerox memorandum explained that the amendment was made to clarify the fact that contingent workers were not eligible for benefits.

■ Finally, it was not impermissible for the Plan Administrator to consider the plaintiffs' agreements with leasing agencies and the fact that they received benefits from those agencies. *See Trombetta,* 102 F.3d at 1440 (holding that is it neither arbitrary nor capricious for a plan administrator to use the express language in such agreements as a factor in its decision).

Accordingly, for all of the above reasons, the Plan Administrator's decision is not arbitrary and capricious and will not be disturbed.

## II. *Discrimination Claim Under § 510*

In addition to the claim for benefits, the plaintiffs also allege that Xerox intentionally interfered with their protected rights in violation of ERISA § 510, 29 U.S.C. § 1140, by adopting a policy limiting to eighteen months the maximum time that supplemental contract workers could be utilized. They claim that the sole purpose of this policy was to prevent the plaintiffs from becoming common law employees

and thereby becoming eligible for benefits under the Plans. They also allege that three of the plaintiffs were terminated pursuant to this policy and that in doing so Xerox interfered with the rights to which these plaintiffs would have become entitled under ERISA.[12]

■ Xerox maintains that the plaintiffs' § 510 claim must fail because the plaintiffs do not allege that they had an employment relationship that entitled them to benefits. The court agrees.

■ Section 510 "targets discriminatory conduct designed to interfere with the exercise or attainment of vested or other rights under [a] plan or ERISA." *Degrooth v. General Dynamics Corp.,* 837 F.Supp. 485, 489 (D.Conn.1993) (quoting *Owens v. Storehouse, Inc.,* 984 F.2d 394, 399 (11th Cir.1993)). Specifically, it is unlawful under § 510 to discharge, fire, suspend, expel, discipline or discriminate against a participant or beneficiary for the purpose of interfering with the attainment of any rights under ERISA to which the participant may become entitled. *See* 29 U.S.C. § 1140. This section does not prevent an employer from discriminating in the creation of employee benefits. *See McGann v. H & H Music Co.,* 946 F.2d 401, 408 (5th Cir.1991). It only protects against "(1) the disruption of employment privileges to prevent the vesting or enjoyment of benefit rights; (2) the disruption of employment privileges to punish the exercise of benefit rights; and (3) the disruption of employment privileges to prevent or punish the giving of testimony in any proceeding relating to ERISA or a sister act." *Sandberg v. KPMG Peat Marwick, LLP,* 111 F.3d 331, 334 (2d Cir. 1997). In other words, a plaintiff must show more than a lost opportunity to accrue benefits to sustain a § 510 claim. *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1111 (2d Cir.1988).

---

**12.** The court has granted the plaintiffs' motion to amend the complaint to add this allegation.

Here, the plaintiffs' § 510 claim fails because the alleged policy does not discriminate or interfere with any right of the plaintiffs to receive benefits under the Xerox Plans. As previously discussed, even if the plaintiffs are common law employees, they are not otherwise eligible under the Plans' express terms to receive benefits. Thus, the policy to limit the amount of time that the services of supplemental contract workers can be utilized does not, as a matter of law, violate § 510 and the plaintiffs' claim under this section of ERISA also fails.

### III. *Breach of Fiduciary Duty Claims*

In count two of the amended complaint,[13] the plaintiffs assert a breach of fiduciary duty claim under ERISA § 502(a)(3). They assert that the fiduciaries breached their duties by permitting Xerox to classify workers as supplemental contract workers, failing to insure that all eligible employees were included in the Plans for which they were eligible, failing to examine whether persons classified as supplemental contract workers were eligible to participate in the Plans, incorrectly misclassifying workers as supplemental contract workers, and failing to provide misclassified workers with documents and information about the Plans. As relief, the plaintiffs seek an order removing the Plan Administrator and other fiduciaries and the appointment of a independent fiduciary to construe the terms of the Plans.

Xerox maintains that the plaintiffs' claims for breach of fiduciary duty under § 502(a)(3) must fail because the plaintiffs have sought essentially the same relief in their claim for benefits under § 502(a)(1)(B). They maintain that a claim under § 502(a)(3) may not be maintained simultaneously with a claim under § 502(a)(1)(B). Xerox also contends that the claim under 502(a)(3) must fail because the alleged wrongful conduct—interpreting the Plans in such a way as to exclude the plaintiffs from eligibility—is a settlor function, not a fiduciary function.

### A. *Simultaneous Claims Under § 502(a)(1)(3) & § 502(a)(3)*

The plaintiffs maintain that they are not precluded from proceeding under both § 502(a)(1)(B) and § 502(a)(3) because they are seeking different relief in the two counts. They assert that in count one they seek benefits under § 502(a)(1)(B), while in count two they seek equitable relief under § 502(a)(3), consisting of (1) removal of the existing fiduciaries; (2) appointment of independent fiduciaries who will construe the Plans' terms and make an independent determination of whether they are entitled to benefits, (3) determination of what benefits they are entitled to apply for, and (4) restoration of losses to the Plans. Alternatively, they argue that in *Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court authorized claims under both § 502(a)(1)(B) and § 502(a)(3). The court disagrees with both the claim that the relief the plaintiffs seek in count two is fundamentally different from that sought in count one, and that *Varity Corp.* supports the maintenance of both claims.

In *Varity Corp.*, the Supreme Court held that individual plaintiffs can obtain relief for breach of fiduciary duty under § 502(a)(3)'s "other appropriate equitable relief" provision.[14] The court held that this catchall provision acts as a "safety

---

**13.** As previously stated, the court has granted the motion to amend the complaint. The issues raised in Xerox's motion are addressed according to the allegations in the amended complaint.

**14.** Prior to *Varity Corp.*, the circuits were divided on the issue of whether an individual or just the plan itself could recover for breach of fiduciary duty. Indeed, the Supreme Court itself, in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n. 9, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), had previously noted that actions for breach of fiduciary duty can only be brought in a representative capacity on behalf of the plan as a whole, not by individuals.

net" which provides "appropriate equitable relief for injuries caused by violations that 502 does not elsewhere adequately remedy." *Id.* at 1078. *Varity Corp.* involved a claim that the plan fiduciaries actively mislead the plaintiffs as to the security of their benefits if they transferred to a newly-created subsidiary of the company. But, in *Varity Corp.*, unlike this case, the plaintiff had no remedy other than the relief provided by § 502(a)(3). The Court was confident that in ruling that the two claims could, under certain circumstances, be maintained in the same action, courts would be mindful that, where Congress has provided adequate relief, the "further appropriate equitable relief" provision of § 502(a)(3) would not be "appropriate." *Varity Corp.*, at 1079 (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)).[15]

The court reads *Varity Corp.* as only authorizing a claim for equitable relief under § 502(a)(3) where an individual plaintiff does not have a claim for benefits under § 502(a)(1)(B). At least one other court has also done so. *See Wald v. Southwestern Bell Corp. Customcare Med. Plan*, 83 F.3d 1002 (8th Cir.1996) (finding that further equitable relief under § 502(a)(3) was not appropriate where the plaintiff had a claim for benefits under § 502(a)(1)(B)).

▮ Accordingly, the court holds that the plaintiffs can not simultaneously maintain a claim for benefits under § 502(a)(1)(B) and a claim for breach of fiduciary duty under § 502(a)(3) where, as here, the relief sought is substantively the same in both counts. Even though the plaintiffs have couched their claim for relief under § 502(a)(3) in equitable terms, they are ultimately seeking the same relief they seek in their § 502(a)(1)(B) claim—

benefits under the Plans. Clearly, if they prevailed on their § 502(a)(1)(B) claim, their remedy would have been adequate. Thus, because the plaintiffs could be made whole if they prevailed on their claim for benefits under § 502(a)(1)(B), they can not simultaneously seek equitable relief under § 502(a)(3).

### B. Fiduciary Conduct

Xerox also claims that the § 502(a)(3) breach of fiduciary duty claim is deficient because the exclusion of leased employees is plan design, which is a settlor function, not a fiduciary function. Thus, it argues that there can be no claim against the fiduciaries for misclassifying the plaintiffs as supplemental contract workers. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Belade v. ITT Corp.*, 909 F.2d 736, 737–38 (2d Cir.1990).

In opposition, the plaintiffs maintain that the claim that the fiduciaries misclassified them as supplemental contract workers, or intentionally or negligently accepted this false classification of them, is an administrative function because it involved interpretation of the Plans' eligibility requirements. They maintain that the Supreme Court, in *Central States, SE & SW Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 572, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985), recognized that an ERISA fiduciary has a common law duty to investigate the identity of participants and beneficiaries when the plan documents do not clearly identify them.

Although the court need not address this claim because of its holding that the breach of fiduciary claim can not be maintained simultaneously with the claim for benefits, it nonetheless notes that *Central States* does not impose such a duty on

15. Interestingly, after *Varity Corp.* was issued commentators predicted there would be extensive litigation over the extent to which equitable relief under 502(a)(3) can be granted when relief is also available under another ERISA provision. *See* Note: Enlarging an

Employer's Fiduciary Hat: Variety Corp v. Howe Increases Employers' Exposure to Liability When They Act As Erisa Fiduciaries, 34 Hous.L.Rev.1959 (1997); Robert N. Eccles & David E. Gordon, Variety Corp. v. Howe, ERISA Litig. Rep., June 1996.

fiduciaries. To the contrary, *Central States* only recognized the right of fiduciaries in a multi-employer pension plan to conduct an audit to identify participants and to insure that the employers were making the required contributions for all participants. *See id.* (stating that it specifically was not holding "that under ERISA a benefit plan's interest in fully identifying participants and beneficiaries require it to conduct ... an audit [to verify the identify of plan participants and beneficiaries])." *Central States,* 472 U.S. at 572, 105 S.Ct. 2833. *See also New York State Teamsters Conf. Pension & Retirement Fund v. Boening Bros., Inc.,* 92 F.3d 127 (2d Cir. 1996)

The court also does not need to consider the plaintiffs' arguments in opposition to Xerox's motion for judgment on the breach of fiduciary duty claim against the individual directors. As previously discussed, this claim cannot be maintained where the plaintiffs seek the same relief in their § 502(a)(1)(B) claim.

## V. *Claim Under New York Labor Law § 198–C*

 Finally, the plaintiffs claim that Xerox violated New York Labor Law § 198–C by failing to provide them with paid vacations and failing to inform them of the existence of its paid vacation policy. They seek unpaid wages and an additional 25% as liquidated damages.

Xerox maintains that only an employer that is a party to an agreement to pay its employees certain benefits or wage supplements can violate § 198–C. It contends that the plaintiffs do not allege such an agreement covering vacation pay and that they can not do so because no such agreement exists.

The court disagrees with the plaintiffs' claim that the SPD is such a written agreement and provides them with the right to vacation benefits. *See Parker v. Sony Pictures Entertainment, Inc.,* 19 F.Supp.2d 141, 156 (S.D.N.Y.1998) (noting that under New York law employment manuals do not create employment contracts), *aff'd in part and rev'd in part on other grounds,* 204 F.3d 326 (2d Cir.2000). Moreover, both the 1990 and 1993 versions of the SPD state in bold print that "[t]his handbook does not create a contract between Xerox and any employee."

Accordingly, because there was no contractual obligation to pay for vacation time, Xerox's motion for judgment on the plaintiffs' claim under New York Labor Law is also granted.

## CONCLUSION

For the foregoing reasons, the plaintiffs motion to amend the complaint [doc. # 31] is GRANTED. Xerox's motion for judgment on the pleadings [doc. # 19] is GRANTED in its entirety. The Clerk shall enter judgment for Xerox and close this case.